THE TRAVELERS, a
Corporation, Plaintiff,

v.

Sharon MAYS and William Mays,
Defendants–Appellants,

and

Harbor Insurance Company,
Defendant–Appellee.

No. 87–762.

Court of Appeals of Iowa.

Oct. 20, 1988.

As Amended Nov. 30, 1988.

Mark E. Liabo, George A. La Marca, Gregory W. Landry, and Robert K. DePuy, of LaMarca, Marcucci, . Wiggins & Anderson, Des Moines, for defendants and appellants Mays.

James C. Fifield and Randy Duncan of Duncan, Jones, Riley & Finley, Des Moines, for defendant-appellee Harbor.

H. Richard Smith and Elizabeth Gregg Kennedy of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for plaintiff.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

Appellants William and Sharon Mays were injured in an automobile accident while operating an automobile that was covered by insurance policies insuring William's employer, Samson Securities Company. The accident was the sole fault of an uninsured motorist. This declaratory judgment action was brought to resolve the Mays' rights to further insurance proceeds under the Mays' Travelers policy and the umbrella policy issued by Harbor Insurance Company. The district court's resolution of the issues involving Travelers is not disputed on this appeal. The sole remaining issue for our consideration is whether the district court was in error in holding that the umbrella policy issued by Harbor Insurance Company provided no uninsured motorist coverage. We hold that the district court's conclusion was correct and we affirm.

In support of their positions, both the Mays and Harbor rely upon the insuring agreements in the umbrella policy. The Mays claim that the insuring agreements, along with the comprehensive automobile

policy which provides for an umbrella of $20,000,000 excess coverage, set the limit for all features of the comprehensive automobile policy. As indicated, that policy included uninsured motorist insurance coverage. It had uninsured motorist coverage with a limit of $500,000. The Mays argue that in the absence of specific exclusion of that coverage, the umbrella policy includes uninsured motorist coverage as well as medical pay coverage, to the full extent of its $20,000,000 limit. Harbor claims that the umbrella policy does not include uninsured motorist or medical pay coverage, since such coverage is not specifically provided for in the policy. Harbor offered evidence to show that the purchase of that coverage was not considered by Samson or by the agents and brokers employed by Samson to acquire the umbrella coverage. Evidence was offered on the theory that if the intent of the contract is not clear from the language, extrinsic evidence may be used to explain that intent.

As support for that position, the district court, in adopting the proposed findings of Harbor, cited *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 172 (Iowa 1975). In that case, the Iowa Supreme Court held the definition of "burglary" contained in a policy covering loss by burglary (among other things) was not within the understanding of the insured at the time the policy was purchased, and held that the definition was unconscionable. 227 N.W.2d at 181. That case did not concern an interpretation of the insuring agreements. There is nothing in this record that indicates Samson knew uninsured motorist benefits were not covered. In fact, testimony of one of Samson's employees showed that he believed such coverage was in the policy at the time of William Mays' employment.

The Iowa law is quite clear. "An insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms." *Benzer v. Iowa Mut. Tornado Ins. Ass'n*, 216 N.W.2d 385, 388 (Iowa 1974) (citations omitted). The rule concerning ambiguous contracts was addressed in the case of

*Rich v. Dyna Technology, Inc.*, 204 N.W. 2d 867, 872 (Iowa 1973), as follows: "Where insurance contracts are ambiguous, require interpretation, or are susceptible to equally proper constructions, the court will adopt the construction most favorable to the insured." We are thus faced with the conclusion that if the insuring agreements are ambiguous or require interpretation, we must adopt the construction most favorable to the insured, and if we find that the insuring agreements in their broad promises include uninsured motorist coverage and medical pay coverage in the policy, then Harbor has the obligation to exclude these coverages by specific and clear language.

Accordingly, our inquiry must determine (1) if the broad language of this policy's insuring agreements promises uninsured motorist coverage, and (2) whether the insuring agreements are ambiguous or in need of interpretation. It is clear that there is no language of specific exclusion of the questioned coverages in Harbor's policy. The district court held the coverage was not included because it was not specifically included in the policy. This is clearly not the law in Iowa. *See Benzer*, 216 N.W.2d at 388.

The umbrella policy contained in the insuring agreements reads as follows:

1. COVERAGE

The company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the insured for all sums which the insured shall be obligated to pay by reason of the *liability* (emphasis added)

   (a) imposed upon the insured by law, or

   (b) assumed under contract or agreement by the Named insured and/or any officer, director, stockholder, partner or employee of the Named insured while acting in his capacity as such,

for damages on account of

   (i) Personal injuries;

   (ii) Property damages;

   (iii) Advertising Liability;

caused by or arising out of each occurrence happening anywhere in the world during the policy period.

2. LIMIT OF LIABILITY

The company hereon shall only be liable for the Ultimate Net Loss, the excess of either

> (a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances;
>
> or
>
> (b) $25,000 Ultimate Net Loss in respect of each occurrence not covered by said underlying insurances (hereinafter called the "underlying limits");

and then only up to a further sum as stated in item 2(a) of the Declarations in all in respect of each occurrence—subject to a limit as stated in item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products and Completed Operations Liability and in respect of Personal injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the insured. In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this Policy, subject to all the terms, conditions and definitions hereof, shall

> (1) in the event of reduction pay the excess of the reduced underlying limit;
>
> (2) in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one insured shall not operate to increase the Company's limit of liability beyond those set forth in the declarations.

In interpreting these provisions, we discuss first the agreement concerning coverage, designated as "1. COVERAGE," above. It is clear, from the plain language of the provision that Harbor agrees to indemnify Samson for all sums *which the insured shall be obligated to pay by reason of the liability (a) imposed upon the insured by law.* For purposes of determining Harbor's obligation to indemnify Samson, we must determine whether the claimed obligation arises as a result of Samson's liability.

"Liability is the state of being bound or obligated in law or justice to do, pay, or make good something." *Black's Law Dictionary* 823 (5th ed.1979). "Liability is responsibility; the state of one who is bound in law and justice to do something which may be enforced by action. This liability may arise from contracts either express or implied, or in consequence of torts committed." *McElfresh v. Kirkendall,* 36 Iowa 224, 226 (1873).

In the case at bar, we are dealing with an automobile accident in which it is agreed that Samson's employee was not at fault. Samson Securities, the employer and a named insured in the Harbor policy, did nothing wrong. The insured committed no tort. Insofar as the Harbor policy agrees to indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability (a) imposed upon the insured by law, there is no liability and consequently no obligation to pay anything. The Harbor policy provides no coverage under coverage provision (a).

The more difficult provision is coverage provision (b). The Mays claim that Samson contracted to furnish to William Mays, as a part of his employment agreement, an umbrella policy which covered everything, including uninsured motorist insurance. In support of this position, Mays offered the testimony of one of Samson's employees, who testified he thought the policy included such coverage, and he had communicated this to William Mays. The district court found that the Mays had failed to prove, by a preponderance of the evidence, that such an agreement had been included in the employment contract. If there is substantial evidence to support the court's finding, we are bound by that finding. Iowa R.App.P. 14(f)(1). We believe there was sufficient evidence to support that finding.

We do not address the question of whether umbrella insurance does or does not provide uninsured motorist insurance when it stands as an excess limit policy over an

underlying policy which provides such insurance coverage. In a case where the insured is obligated to pay sums by reason of liability imposed by law or by a valid agreement, whether it is on account of an accident involving an uninsured motorist or some other consequence, the Harbor policy stands as an excess policy to cover such an occurrence. Under the agreed facts of this case, where Samson was not at fault for the Mays' automobile accident, and on the evidence in this case involving Samson's contractual liability, the Harbor policy does not provide any additional coverage.

The mere reference to the comprehensive automobile policy does not change the undertaking of the insurance contract to indemnify the insured for all sums which the insured shall be obligated to pay by reason of its liability.

Extraneous evidence to explain the intention of the parties in this case is not helpful. Were the provisions in the policy needful of interpretation, we would, in accord with Iowa law, hold that the policy's broad promises would require specific exclusion of uninsured motorist and medical pay coverage. Under those circumstances, the conclusion would be inescapable that such coverages were included. We merely hold that under the facts of this particular case and under the agreed state of facts, there is no liability on the part of Samson, and consequently no obligation to pay, and no need for indemnity.

AFFIRMED.