**TERRA INDUSTRIES, INC., Plaintiff,**

**v.**

**COMMONWEALTH INSURANCE COMPANY OF AMERICA, et. al., Defendants.**

**No. C 97–4030–MWB.**

United States District Court, N.D. Iowa, Western Division.

Oct. 10, 1997.

Gregg E. Williams of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Souix City, IA, Hugh R. McCombs

**584**

and Alan J. Martin of Mayer, Brown & Platt, Chicago, IL, for Plaintiff Terra.

Alan R. Miller of Robins, Kaplan, Miller & Ciresi, L.L.P., Boston, MA, Douglas G. Houser of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, Michael W. Ellwanger of Rawlings, Niland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Souix City, IA, for IRI Defendants.

MEMORANDUM OPINION AND ORDER REGARDING THE MOTION OF THE "IRI DEFENDANTS" FOR PARTIAL STAY OF PROCEEDINGS AND PLAINTIFF'S CROSS–MOTIONS FOR PROTECTIVE ORDERS

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................... 585
   A. Procedural Background ............................................585
   B. Factual Background ..............................................586

II. LEGAL ANALYSIS ................................................. 587
   A. Preliminary Issues ..............................................587
      1. Power to stay proceedings ....................................587
      2. Rules of policy interpretation ...............................588
        a. A summary of the rules ....................................588
        b. Terms dictated by statute and contra proferentem .................588
   B. Preconditions To Suit ...........................................591
      1. Requirements in case loss occurs .............................593
      2. Appraisal ....................................................593
   C. Fulfillment Of Preconditions To Suit ............................594
      1. Proof of loss ................................................594
      2. Examinations under oath ......................................595
   D. Appraisal .......................................................595
      1. Untimely demand pursuant to the policy .......................596
        a. The thirty-day deadline ...................................596
        b. The sixty-day deadline.....................................596
        c. The policy requirement ....................................597
      2. Preemption of appraisal by the filing of the lawsuit .........598
      3. Waiver of the right to demand appraisal ......................601
      4. Protective order .............................................604
      5. Power to stay proceedings in part pending appraisal ..........606
      6. Scope of appraisal ..........................................606
   E. Certification For Interlocutory Appeal...........................607

III. CONCLUSION ..................................................... 609

When someone refers to a dispute as a "shape of the table dispute," as counsel for one of the parties in this case did during oral arguments, what image is called to mind probably depends upon how old you are—do you instantly think of the peace talks in the 1950s to end the Korean War, the Paris peace talks in the late 1960s and early 1970s to end the Vietnam War, one of the protracted labor disputes of the late 1970s, the Mid–East peace talks of the 1980s and early 1990s, or presidential summits of the mid 1990s? Whatever the historical context that phrase calls to mind, it probably sends a cold chill of despair or a sick feeling of frustration through you to think that, while serious substantive issues are pending, the parties can't even agree on the context in which those issues will be resolved. Yet, a "shape of the table" dispute does not necessarily suggest triviality or pointlessness of the dispute over the proper forum or procedure, at least not in a legal system founded upon the presumption that fair process is one of the best guarantors of substantial justice. The "shape of the table" dispute presented here is whether questions of the extent of loss from a catastrophic explosion should be determined through an appraisal process provided in an insurance policy or through the insured's lawsuit. Although frustrating, the court finds this dispute over the proper forum for initial determination of at least some of the measurement disputes between the

parties—with potentially hundreds of millions of dollars at issue, more than two years of claims evaluation already behind the parties, and the prospect of years of litigation ahead—is anything but trivial.

## I. INTRODUCTION

### A. Procedural Background

This is one of several lawsuits to arise from the catastrophic explosion on December 13, 1994, of a fertilizer plant in northwest Iowa owned by plaintiff Terra Industries, Inc. in which four persons were killed, eighteen were injured, and the fertilizer plant and its owner sustained enormous damage now alleged to exceed $360 million. In this litigation, Terra has brought a declaratory judgment action against dozens of its insurers concerning the extent of their liability for Terra's loss. In the last two-and-one-half years, the insurers and Terra have engaged in the enormous tasks of assessing the damage and the extent of Terra's insurance coverage and repairing and rebuilding the facility. The insurers have paid just over $200 million of Terra's claims, but approximately another $160 million in claims remained unresolved when Terra filed this lawsuit on April 11, 1997.

This matter comes before the court pursuant to the May 23, 1997, motion of the so-called called "IRI defendants"[1] a group of Terra's insurers who are responsible for approximately half of Terra's insurance coverage, for a partial stay of proceedings pending completion of alternative dispute resolution procedures the movants assert are required under the Industrial Risk Insurers Property Insurance Policy for Minorca U.S.A., Complaint, Exhibit 1 (hereinafter the "IRI Policy").[2] The IRI defendants contend that Terra filed this litigation prematurely, because

Terra had not yet complied with all of the requirements. Specifically, the IRI defendants contend that Terra had failed to file a formal proof of loss, to submit to examinations under oath, or to pursue appraisal procedures prior to filing suit. The IRI defendants contend that these steps precedent to suit are required by the terms of the IRI Policy and the Iowa insurance statute that dictates those terms. Terra contends that these requirements have been either waived or substantially complied with under the circumstances of this case, including the two-and-one-half year investigation of Terra's claim undertaken by Terra and the insurance companies. Terra also contends that appraisal simply is not a prerequisite to suit and that the IRI defendants' demand for appraisal is simply too late to be effective.

In addition, this matter comes before the court pursuant to Terra's cross-motions for protective orders, filed July 1, 1997, and August 12, 1997, respectively. In those motions, Terra seeks protection from what Terra describes as the IRI defendants' belated attempts to take examinations under oath and to compel recourse to the appraisal procedures. Terra contends that the IRI defendants are attempting to delay litigation that all parties recognized was inevitable by asserting procedures that have been waived or that are not reasonably required. Terra also contends that the IRI defendants are attempting to use these procedures for premature, duplicative, and one-sided discovery in this lawsuit. The IRI defendants contend that Terra should not obtain the protection of this court from execution of provisions of the relevant insurance policy, particularly where those provisions are dictated by Iowa law.

The parties have submitted extensive briefs and exhibits, and the court heard oral

---

1. The "IRI defendants" are a group of companies with the umbrella name of Industrial Risk Insurers; hence the acronym used in this litigation.

2. Although two other defendants or groups of defendants, also insurance companies, filed motions for a partial stay of the proceedings as well, those defendants have settled their disputes with Terra. Terra submitted at the hearing a Securi-

ties and Exchange Commission Form 8–K as evidence of that settlement, Plaintiffs Hearing Exhibit 1, and counsel for the settling defendants appeared to advise the court that settlement had been reached on claims against them. Therefore, the motions for a partial stay filed by other defendants will be denied as moot and the present ruling addresses only the IRI defendants'motion for a partial stay.

arguments on September 30, 1997.[3] Terra submitted some additional exhibits following the oral arguments by agreement of the parties.

## B. Factual Background

The record reveals the following factual context for the present motions. On December 13, 1994, a catastrophic explosion occurred at Terra's fertilizer plant at Port Neal, Iowa. The amount of damage to Terra's Port Neal facility as a result of the explosion was unprecedented, as was the scale of the response to that disaster by both Terra and its insurers. Terra immediately marshaled investigation and reconstruction efforts and provided access to the site by a large team of engineers and investigators employed by the insurers. For approximately four months, the parties exchanged information, Terra's invoices were reviewed to determine whether they stated "incident related (IR)" or "non-incident related (NIR)" expenses, and those invoices were paid accordingly by the insurers. However, at the end of that period, Terra informed its insurers that it wished to concentrate exclusively on repairing and re-building its facility, and, although it would continue to submit invoices, it wished to be relieved of the necessity of submitting to claims evaluations until it could make a final submission. The insurers acceded to that request.

For approximately the next year, the insurers were still allowed to maintain their investigators on the site, but they made preliminary IR and NIR determinations without Terra's participation. Claims were not paid during this period, although the insurers had paid over $200 million of Terra's claims up to that time. Throughout this period, Terra requested extensions of time to file a final proof of loss of its claim and to institute suit

if required. Those requests for extensions were granted by the insurers.

On October 3, 1996, Terra made what it considered to be its final submission of documents concerning the repair and rebuilding of the Port Neal facility at a meeting with all insurers at the Sioux City Hilton Hotel. That submission consisted of forty-seven boxes containing tens of thousands of documents. Counsel for the IRI defendants represented that seventy to eighty percent of the documents provided to the insurers on October 3, 1996, had never before been submitted or evaluated, and Terra did not dispute that characterization. Terra contends, however, that the submission of documents on October 3, 1996, satisfied its obligation to make a final proof of loss under the IRI Policy. Notwithstanding that assertion, after submitting documents on October 3, 1996, Terra again sought extensions of time to make a final formal submission of its proof of loss and to bring suit. Those requests for extensions were granted. Terra's final sworn proof of loss was submitted on April 17, 1997, six days after Terra filed the present lawsuit.

On October 3, 1996, Terra also presented the insurers with a "protocol" or schedule of what Terra anticipated would be the time frame for final resolution of its insurance claims. IRI Defendants' Hearing Exhibit 3. According to that "protocol," responses to and discussions of Terra's claims were expected through March of 1997, with a discussion of options for dispute resolution anticipated on March 10, 1997. Discussions of Terra's claims did continue into the early Spring of 1997. On April 10, 1997, Terra sent its insurers a proposed agenda for a meeting on April 14 and 15, 1997, in Houston, Texas, concerning the Port Neal claim recovery. However, on April 11, 1997, Terra filed

---

3. At the oral arguments, plaintiff Terra was represented by counsel Gregg E. Williams of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., in Sioux City, Iowa, and by counsel Hugh R. McCombs and Alan J. Martin of Mayer, Brown & Platt in Chicago, Illinois. The "IRI defendants" were represented by counsel Alan R. Miller of Robins, Kaplan, Miller & Ciresi, L.L.P., in Boston, Massachusetts, and counsel Douglas G. Houser of Bullivant, Houser, Bailey, Pendergrass & Hoffman of Portland, Oregon,

and by local counsel Michael W. Ellwanger of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser in Sioux City, Iowa. Although the parties had the opportunity for an evidentiary hearing, apart from submission of a few exhibits, the parties did not present evidence. They instead stated that they would rely on their oral and written arguments and affidavits and exhibits already submitted in support of their motions and resistances.

this lawsuit, and the Houston meeting was cancelled.

Terra asserts that three things prompted it to file suit instead of proceeding with claims negotiations. First, in January of 1997, a Terra official was told by the lead certified public accountant for the IRI defendants that the property damage dispute between Terra and its insurers was "headed for the courtroom." The IRI defendants contend that this remark was made by someone not involved in actual determination of claims. Second, Terra contends that a report from the insurers in March of 1997, the "MDD Report," Exhibit A attached to the Shaffer Affidavit, was a clear cut denial of substantial parts of its claim, creating an impasse. The IRI defendants characterize this report as a statement of positions for further discussions, not a formal denial of any formal claim. Finally, Terra asserts that it filed suit in response to a denial of payment on a further $50 million of its claim. The IRI defendants characterize their action on these claims as also constituting a statement of positions for discussion, not a denial of the claims. The IRI defendants suggest that Terra's suit was filed primarily to obtain leverage in settlement discussions. The court need not resolve any dispute about the motivation for Terra's suit. Instead, the court has presented the positions of the parties to identify the actions taken by the parties in the early part of 1997 and to indicate the climate of the negotiations at that time.

Even after Terra's suit was filed, there were efforts on both sides to attempt to reopen negotiations. Eventually, however, on July 23, 1997, in a reply brief pertaining to motions presently pending before the court, the IRI defendants made a formal demand for appraisal of remaining disputes over the amount of Terra's loss pursuant to the terms of the IRI Policy.

## II. LEGAL ANALYSIS

The court believes that the key question for resolution of the pending motions is whether the IRI defendants' demand for an appraisal was made within a reasonable time after the parties reached an impasse on amount-of-loss issues. Nonetheless, the pending motions present numerous other issues to be addressed before or in addition to resolution of this key question. The court finds that some of those issues appear to have been resolved by the efflux of time since the filing of the motions or by the agreement of the parties at oral argument, while still others will be resolved or mooted by the court's disposition of related issues. What remains for the court to resolve, however clear the basic question may be, is substantial. The court was presented with excellent briefing and advocacy by both parties, which demonstrated how difficult and close some of the remaining issues are.

### A. Preliminary Issues

### 1. Power to stay proceedings

■ Although the parties raise numerous issues in their motions, no party denies the court's power to stay these proceedings, if the court is so disposed. Instead, the parties dispute only whether a stay is appropriate. Nonetheless, the court concludes that it must first determine what authority it may have to stay the litigation pending exhaustion of the appraisal and other procedures under the applicable insurance policy. The court finds that the necessary authority comes from the court's inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of a case pending before it. *See, e.g., Lunde v. Helms,* 898 F.2d 1343, 1345 (8th Cir.) (a stay of federal litigation pending exhaustion of state administrative and judicial proceedings was a "matter of docket management" within the court's inherent power), *cert. denied,* 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 208 (1990); *Webb v. R. Rowland Co., Inc.,* 800 F.2d 803, 808 (8th Cir.1986) (whether or not the Arbitration Act provided authority for a stay in that case, "[t]he district court also has the inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it"); *City of Bismarck v. Toltz, King, Duvall, Anderson & Assocs., Inc.,* 767 F.2d 429, 433 (8th Cir.1985) (whether or not the Arbitration Act applied, the district court had the inherent power to

grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the case pending before it); *Contracting Northwest, Inc. v. City of Fredericksburg, Iowa,* 713 F.2d 382, 387 (8th Cir.1983) (a stay was appropriate pursuant to the court's inherent power even if the Arbitration Act did not apply to a stay of proceedings between parties with no arbitration agreement).

### 2. *Rules of policy interpretation*
#### a. *A summary of the rules*

Also, because an essential part of the court's analysis here is interpretation of the IRI Policy, the court will touch briefly on the rules for interpretation of insurance contracts under Iowa law. Those standards were recently summarized by the Iowa Supreme Court in *Morgan v. American Family Mut. Ins. Co.,* 534 N.W.2d 92 (Iowa 1995):

> The construction and interpretation of an insurance policy is a question of law for the court to decide. *Johnson v. Farm Bureau Mut. Ins. Co.,* 533 N.W.2d 203, 206 (Iowa 1995). The policy is to be construed as a whole, giving the words used their ordinary, not technical meaning to achieve a practical and fair interpretation. *Gracey v. Heritage Mut. Ins. Co.,* 518 N.W.2d 372, 373 (Iowa 1994). When the terms of an insurance policy are ambiguous, we will construe them against the insurer. *Id.* However, the mere fact that the parties disagree on the meaning of a particular term does not establish ambiguity. *Id.* We will not give a strained or unnatural reading to the words of the policy to create ambiguity where there is none. *West Trucking Line, Inc. v. Northland Ins. Co.,* 459 N.W.2d 262, 263 (Iowa 1990).

*Morgan,* 534 N.W.2d at 99. The standards stated in *Morgan* are mirrored in myriad decisions by Iowa courts. *See, e.g., AMCO Ins. Co. v. Rossman,* 518 N.W.2d 333, 334 (Iowa 1994) (terms given ordinary meaning as reasonable person would understand them, and disagreement between parties over meaning does not establish ambiguity); *Farm Bureau Mut. Ins. Co. v. Sandbulte,* 302 N.W.2d 104, 108 (Iowa 1981) (disagreement between parties as to meaning does not

establish ambiguity); *Pappas v. Bever,* 219 N.W.2d 720, 721 (Iowa 1974) (terms must be given their plain and ordinary meanings); *Tom Riley Law Firm, P.C. v. Tang,* 521 N.W.2d 758, 759 (Iowa.Ct.App.1994) (disagreement of parties as to meaning does not establish ambiguity, citing *Sandbulte,* and terms must be given their ordinary meaning, citing *Pappas*). Furthermore, this court has recounted, amplified, and applied these Iowa rules for interpretation of insurance contracts on more than one occasion. *See Coulter v. CIGNA Property & Cas. Cos.,* 934 F.Supp. 1101, 1114–15 (N.D.Iowa 1996); *Utica Mut. Ins. Co. v. Stockdale Agency,* 892 F.Supp. 1179, 1201–02 (N.D.Iowa 1995).

#### b. *Terms dictated by statute and contra proferentem*

■ A much contested issue at the oral arguments was whether different rules apply when the terms of the insurance policy in question are dictated by statute. Iowa Code § 515.138(2) provides that "[i]t shall be unlawful for any insurance company to issue any policy of fire insurance ... other or different from the standard form of fire insurance policy herein set forth." The terms of a fire insurance policy dictated by statute are set forth in Iowa Code § 515.138(6). Terra asserts that, even though the terms of the IRI Policy are dictated by statute, the rule of *contra proferentem*—the principle that the policy is construed against the insurer, because insurance policies are contracts of adhesion—still applies. Terra contends that the silence of the IRI Policy on whether suit preempts appraisal or vice versa requires the court to construe the policy to permit Terra's suit to continue unimpeded, because under the rule of *contra proferentem,* appraisal cannot be construed to be a precondition to Terra's suit. Thus, the question the parties pose is whether the rule of *contra proferentem* still applies to insurance policies in which the terms of the policy are dictated by statute.

Terra relies on the decision of the Iowa Supreme Court in *Hoekstra v. Farm Bureau Mut. Ins. Co.,* 382 N.W.2d 100 (Iowa 1986). In *Hoekstra,* the question was whether the insureds had substantially complied with con-

ditions precedent to suit when the insureds had refused to provide documents demanded by the insurer on the ground that the documents were not "reasonably required" as stated in the policy. *Hoekstra*, 382 N.W.2d at 105. The insurer objected to submitting to the jury the question of the reasonableness of its demands for documents, contending that, because the contract provisions in question were dictated by statute, the court should have determined, as a matter of law, that the insurer's requests for documents were reasonable. *Id.* The Iowa Supreme Court agreed that statutory interpretation is a question of law for the court, but that various cases stood for the proposition that it is for the jury to decide whether the conduct or acts of a party are reasonable under the circumstances when facts are in dispute. *Id.* The court continued:

> [The insurer] seeks to distinguish these cases on the ground it is the statutory language, literally incorporated in the contract provisions, that is at issue here, and we cannot abandon our duty to be the final arbiter in the construction of Iowa statutes ... by submitting the question of "reasonableness" to the jury.
>
> This contention ignores the general rule that though the form of a policy is prescribed by statute, it
>
> > is not to be treated as a legislative enactment after it has been accepted by the parties, but as a voluntary contract, which, like any other contract, derives its force and efficacy from the consent of the parties.
>
> [citations omitted.]

*Hoekstra*, 382 N.W.2d at 105 (citations and internal quotation marks omitted). The court therefore found no error in the trial court's denial of summary judgment on the "reasonableness" question and submission of that question to the jury. Id. at 106. The insurer next argued that, because the statutory language of the policy required that compliance with the policy provisions was a precondition to suit, strict compliance with those preconditions, not "substantial compliance," was required. *Id.* The court's conclusion was as follows:

> [The insurer] argues that because the statute is incorporated into the policy the general rule of constructing the policy liberally in favor of the insured is not implicated and strict compliance should be required. This position is untenable in view of the general rule [that] [w]hen the contract has been accepted voluntarily by the parties, it is treated like any other contract, and the same rules apply.

*Hoekstra*, 382 N.W.2d at 106. The court therefore held that only "substantial compliance" with policy requirements was a precondition to suit. *Id.*

The court concludes that *Hoekstra* can be read as a reaffirmation of the applicability of the rule of *contra proferentem* to the construction and interpretation of insurance policies, even where the terms of those policies are dictated by statute. After all, *Hoekstra* requires that the policy be "treated like any other [insurance] contract, and the same rules apply," *id.*, and among the "fundamental rules" of interpretation of insurance contracts under Iowa law is the principle that such contracts must be construed in the light most favorable to the insured. *Cincinnati Ins. Co. v. Hopkins Sporting Goods, Inc.*, 522 N.W.2d 837, 839 (Iowa 1994); *AMCO Ins. Co. v. Rossman*, 518 N.W.2d 333, 334 (Iowa 1994) ("When the meaning of terms of an insurance policy is susceptible to two interpretations, the one favoring the insured is adopted."); *Jensen v. Jefferson County Mut. Ins. Ass'n*, 510 N.W.2d 870, 871 (Iowa 1994); *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991); *North Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452, 454 (Iowa 1987); *Rich v. Dyna Technology, Inc.*, 204 N.W.2d 867, 872 (Iowa 1973) ("Where insurance contracts are ambiguous, require interpretation, or are susceptible to equally proper constructions, the court will adopt the construction most favorable to the insured."); *The Travelers v. Mays*, 434 N.W.2d 133, 134 (Iowa.Ct.App. 1988) (quoting *Rich*). The reason for this rule is that insurance contracts are contracts of adhesion. *Cincinnati Ins. Co.*, 522 N.W.2d at 839; *Jensen*, 510 N.W.2d at 871; *A.Y. McDonald Indus., Inc.*, 475 N.W.2d at 619.

However, application of such a rule is clearly at odds with the greater weight—and what this court finds to be the better reasoned—of authority in other jurisdictions. The courts of Massachusetts have been particularly firm in their rejection of the applicability of the *contra proferentem* rule when the terms of the policy in question are prescribed by statute,[4] but other states also reject application of the *contra proferentem* rule in such a situation.[5] This court is of the opinion that rules of statutory interpretation, rather than the *contra proferentem* rule, ought to apply when the terms of an insurance contract are dictated by statute, because, in such circumstances, the real question is or ought to be the intent of the *legislature*, not the intent of the parties to a contract in which neither has any real say as to the terms of the "agreement." *Accord*

**4.** *See Pappas Enters., Inc. v. Commerce & Indus. Ins. Co.*, 422 Mass. 80, 661 N.E.2d 81, 83 (1996) (the principle of construing ambiguities against the insurer "has no proper place in construing policy language that is, as in this case, dictated by statute. "); *McNeill v. Metropolitan Property & Liab. Ins. Co.*, 420 Mass. 587, 650 N.E.2d 793 (1995) (same); *Thattil v. Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.*; 415 Mass. 381, 613 N.E.2d 908 (1993) (the rule construing ambiguities in a policy against the insurer does not apply where the language is mandated by statute and approved by the Commissioner of Insurance); *Vaiarella v. Hanover Ins. Co.*, 409 Mass. 523, 567 N.E.2d 916 (1991) ("Because this provision was prescribed by statute, and was thus not controlled by the defendant insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable"; internal citations and quotation marks omitted); *Royal–Globe Ins. Co. v. Craven*, 411 Mass. 629, 585 N.E.2d 315, 318 n. 6 (1992) ("In any event, the rule of strict construction against the insurer would not apply to this case. This is because the policy language is controlled by the Commissioner of Insurance and not the insurer"; internal quotations and citations omitted); *Moore v. Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 1010, 519 N.E.2d 265 (1988) (rejecting the *contra proferentem* rule, citing *Bilodeau, infra.); Bilodeau v. Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 467 N.E.2d 137 (1984) ("Because the language of the standard policy is prescribed by statute and controlled by the Division of Insurance rather than the individual insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable."); *see also Aetna Cas. & Surety Co. v. Sullivan*, 33 Mass.App. Ct. 154, 597 N.E.2d 62, 64 (1992) (citing *Bilodeau* for the correct rule when terms are approved by the Commissioner of Insurance, even if the terms are not prescribed by statute); *Commerce Ins. Co. v. Koch*, 25 Mass.App.Ct. 383, 522 N.E.2d 979, 981–82 (1987) ("The basic rule has been that ambiguity in an insurance contract is counted strongly against the insurer.... However, it was early decided in the Commonwealth that where the wording or substantive content of a policy provision was fixed by statute, the strict rule *contra proferentem* should not apply.... Where the statute left room for an optional kind of coverage, but the terms or content of the option were not laid down, the strict rule still attached"; citations omitted).

**5.** *See Allstate Life Ins. Co. v. Fox*, 700 So.2d 49, 49 n. 1 (Fla.Dist.Ct.App.1997) ("While policy language which is ambiguous is generally to be construed against the insurer, [citation omitted], Couch on Insurance, 2d, § 72–10 (rev. ed.1983), makes the observation that 'where the provision is in the form prescribed by statute, the concept that the language should be construed strictly against the insurer has less validity and does not apply.' "); *Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 644 A.2d 1098, 1103 (1994) ("When terms in an insurance policy are included by statutory mandate, however, courts no longer construe the policy against the insurer; rather, the ordinary rules of statutory construction apply. "); *State Farm Mut. Auto. Ins. Co. v. Messinger*, 232 Cal.App.3d 508, 519, 283 Cal.Rptr. 493, 500 (1991) ("Although it is generally true that an ambiguity in an insurance policy is construed against the insurer who causes the ambiguity, where the language is that of the Legislature, this principle does not apply."); *Kennedy v. Allstate Ins. Co.*, 211 N.J.Super. 515, 511 A.2d 1301, 1303 (Law Div.1986) ("[W]here the language of the exclusionary clause in an insurance policy is identical to the corresponding statutory language, the rule of construction against the insurer is not necessarily applicable.... A specific provision integrated into an insurance contract pursuant to statutory authority is to be interpreted and given effect in accordance with legislative intent, as a matter of public policy.... Thus, the judicial function here is to effectuate the legislative goal to the extent permitted by the statutory scheme"; citations omitted), *aff'd*, 213 N.J.Super. 137, 516 A.2d 1117 (App.Div.1986); *McMahon v. Millers Nat'l Ins. Co.*, 131 Ill.App.2d 339, 266 N.E.2d 714, 717 (1971) ("[T]his court has held that the general rule that ambiguous provisions are to be construed strictly against the insurer does not apply to provisions of a policy prescribed by statute"; citations and internal quotations omitted); *Midwest Triangle Paint Works, Inc. v. Firemen's Ins. Co.*, 36 Ill.App.2d 65, 183 N.E.2d 562, 564 (1962) ("[T]he general rule that ambiguous provisions are to be construed strictly against the insurer does not apply to provisions of a policy prescribed by statute.").

*Paul Revere Life Ins. Co. v. Haas,* 137 N.J. 190, 644 A.2d 1098, 1103 (1994) ("When terms in an insurance policy are included by statutory mandate, however, courts no longer construe the policy against the insurer; rather, the ordinary rules of statutory construction apply."); *State Farm Mut. Auto. Ins. Co. v. Messinger,* 232 Cal.App.3d 508, 519, 283 Cal.Rptr. 493, 500 (1991) ("[W]here the language is that of the Legislature, ... 'the statute [and, hence, the insurance policy provision in conformity therewith] must be construed to implement the intent of the Legislature and should not be construed strictly against the insurer,'" quoting *Prudential–LMI Com. Ins. v. Superior Court,* 51 Cal.3d 674, 684, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990), with interpolation by the court of appeals); *Kennedy v. Allstate Ins. Co.,* 211 N.J.Super. 515, 511 A.2d 1301, 1303 (L.Div. 1986) ("[W]here the language of the exclusionary clause in an insurance policy is identical to the corresponding statutory language, the rule of construction against the insurer is not necessarily applicable.... A specific provision integrated into an insurance contract pursuant to statutory authority is to be interpreted and given effect in accordance with legislative intent, as a matter of public policy.... Thus, the judicial function here is to effectuate the legislative goal to the extent permitted by the statutory scheme"; citations omitted), *aff'd,* 213 N.J.Super. 137, 516 A.2d 1117 (App.Div. 1986).[6] One might say that in such circumstances, the policy is one of "adhesion" as to *both* the insurer and the insured. *Cf Cincinnati Ins. Co.,* 522 N.W.2d at 839 (justifying the *contra proferentem* rule on the ground that insurance contracts are adhesion contracts as to the insured). Consequently, it makes little sense to indulge in the fiction that the insurer offered the insured a contract of adhesion, and therefore the insurer should bear the burden of unfavorable interpretation when a provision is ambiguous.

Nonetheless, as shall be seen below, whether or not the rule of *contra proferen-*

*tem* does or does not apply to an insurance policy whose terms are dictated by Iowa statutory law has virtually no impact upon the court's ultimate disposition of the pending motions. This is because the rule construing provisions of a policy against the insurer applies only when the terms of the policy are ambiguous or unclear. *Morgan,* 534 N.W.2d at 99 ("When the terms of an insurance policy are ambiguous, we will construe them against the insurer."); *Gracey,* 518 N.W.2d at 373 (courts construe the terms of a policy against an insurer when the terms of an insurance policy are ambiguous); *AMCO Ins. Co.,* 518 N.W.2d at 334 (applying the *contra proferentem* rule "[w]hen the meaning of terms of an insurance policy is susceptible to two interpretations"); *Farm & City Ins. Co.,* 509 N.W.2d at 490–91 (rule applies only when the policy terms are ambiguous or unclear); *Rich,* 204 N.W.2d at 872 ("Where insurance contracts are ambiguous, require interpretation, or are susceptible to equally proper constructions, the court will adopt the construction most favorable to the insured."); *The Travelers,* 434 N.W.2d at 134 (quoting *Rich* ). As explained further herein, the court finds no ambiguity of the policy upon which this ruling turns.

### B. Preconditions To Suit

The IRI defendants contend that Terra failed to fulfill three specific prerequisites or preconditions to the present lawsuit under the terms of the IRI Policy, and hence under the terms of Iowa Code § 515.138(6): Terra failed to make the required proof of loss; Terra failed make persons available for examinations under oath; and Terra failed to pursue the appraisal procedures outlined in the policy. To determine whether compliance with each of these provisions is a prerequisite or precondition to Terra's suit, the court looks first to the terms of the IRI Policy itself, construing the policy as a whole. *Morgan,* 534 N.W.2d at 99. That policy includes the following provision concerning suit by the insured:

---

**6.** This court recently examined in detail the rules of statutory interpretation employed by the Iowa Supreme Court in *Prudential Ins. Co. of Am. v. Rand & Reed Powers Partnership,* 972 F.Supp. 1194 (N.D.Iowa 1997). It is these rules, rather than the rule of *contra proferentem* that this court would find most appropriate to interpretation of provisions of an insurance policy that are dictated by statute.

**Suit.** No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity *unless all the requirements of this policy shall have been complied with,* and unless commenced within twelve months next after inception of the loss.

IRI Policy, Pt. 1, p. 4 (emphasis added). This clause mirrors the "suit" clause in the Iowa Standard Fire Policy, Iowa Code § 515.138(6) (second page of standard fire policy). Hence, the "suit" clause conforms to the requirement of Iowa Code § 515.138(2) that it not contain terms "other or different from the standard form of fire insurance policy herein set forth." § 515.138(2). The parties do not dispute that the deadline for commencement of suit has been extended in this case, so that Terra's lawsuit is not late. Rather, the parties dispute whether Terra's suit is premature pursuant to the terms of the policy, in light of whether all of the requirements of this policy had been complied with when Terra filed suit on April 11, 1997.

What are "the requirements of this policy" that must be complied with before Terra may bring suit pursuant to the "suit" provision of its IRI Policy and Iowa Code § 515.138(6)? The IRI defendants point to two provisions in particular:

**Requirements in case loss occurs.** *The insured shall* give immediate written notice to the Companies of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; **and within sixty days after the loss, unless such time is extended in writing by the Companies, the insured shall render to the Companies a proof of loss,** *signed and sworn to by the insured,* stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereof, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. *The insured, as often as may be reasonably required, shall* exhibit to any person designated by the Companies all that remains of any property herein described, and *submit to examinations under oath by any person named by the Companies, and subscribe the same;* and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Companies or their representative, and shall permit extracts and copies thereof to be made.

**Appraisal.** *In case the insured and the Companies shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire;* and failing for fifteen days to agree upon such umpire, then, on request of the insured or the Companies, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with the Companies shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of apprais-

al and umpire shall be paid by the parties equally.

IRI Policy, Pt. 1, pp. 2–3 (bold in original, italics added). Again, these provisions mirror the statutory requirements for fire polices in Iowa Code § 515.138(6) (second page of standard fire policy).

### 1. Requirements in case loss occurs

The actions listed in the "Requirements in case loss occurs" provisions are prefaced by a mandatory "shall." IRI Policy, p. 2 ("Requirements in case loss occurs"); Iowa Code § 515.138(6) (second page of standard fire policy). Thus, unless these requirements have been waived or are somehow otherwise inapplicable, under the express and unambiguous terms of the IRI Policy, *Morgan*, 534 N.W.2d at 99, and Iowa Code § 515.138(6), Terra must provide appropriate proof of loss and submit to examinations under oath as preconditions to suit, because proof of loss and examinations under oath are "requirements of the policy."

### 2. Appraisal

■ However, whether Terra's failure to engage in the policy's appraisal process prior to filing this suit makes this suit "premature" is a more complicated question. It is undisputed that Terra did not engage in such a process prior to filing suit, but it is also undisputed that the IRI defendants made no demand for appraisal before Terra filed this lawsuit. The court and the parties have found no Iowa decisions directly addressing whether the appraisal procedure prescribed by statute in the Iowa Standard Fire Insurance Policy, Iowa Code § 515.138(6), is a "precondition" to suit on the policy. Terra has asserted that the appraisal process is not

required until and unless someone demands it—it is not "self-executing"—so that it cannot be a precondition to suit if no demand for appraisal was made before suit is filed. The IRI defendants maintain that appraisal is a precondition to Terra's suit. The court concludes that, on this issue, Terra has stated the proper rule for the appraisal term in question, although the court does not believe Terra is correct in its further assertion that the filing of its suit preempted and cutoff forever recourse to the appraisal process.

■ In *Massey v. Farmers Ins. Group*, 837 P.2d 880 (Okla.1992), in a decision answering a certified question from the Tenth Circuit Court of Appeals concerning whether an umpire's damage appraisal has any preclusive effect upon the party that was compelled to enter into the appraisal process by the other, the Supreme Court of Oklahoma examined that state's statutorily prescribed appraisal provision for fire insurance policies. That provision is essentially identical to the one in question here.[7] The Oklahoma court noted that it had previously held that the appraisal clause "does not constitute a condition precedent for maintaining an action on the policy where the insurer, in making demand for an appraisal, reserves the right to litigate the question of liability." *Massey*, 837 P.2d at 882 (citing *Fidelity–Phenix Fire Ins. Co. of N.Y. v. Penick*, 401 P.2d 514 (Okla.1965)). The court then noted the similar holding of the Oregon Supreme Court:

> In *Molodyh v. Truck Ins. Exch.*, 304 Or. 290, 744 P.2d 992 (1987), the court held, as this Court did in *Penick, supra*, that a statutorily-mandated appraisal provision is not a condition precedent to litigation. Thus, the statute does not require compli-

7. The appraisal provision of the policy in question in *Massey*, as dictated by OKLA. STAT. tit. 36, § 4803(G), provided as follows:

**Appraisal.** In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

*Massey*, 837 P.2d at 881.

ance with the provision in order to litigate a claim. The court further held that once the appraisal process is demanded by one of the parties, the procedure of the statute and policy becomes mandatory. Hence, to the demanding party, the appraisal process is permissive because they have chosen to invoke it. However, once that party invokes it, the process becomes mandatory to the other party.

*Massey*, 837 P.2d at 883. Older decisions, also concerning statutorily-prescribed appraisal provisions essentially identical to the one dictated by Iowa Code § 515.138(6), and therefore essentially identical to the one found in the IRI Policy, also conclude that the provision is *not* a precondition to suit. *See, e.g., Davis v. Anchor Mut. Fire Ins. Co.,* 96 Iowa 70, 64 N.W. 687, 689 (1895) (upholding the district court's conclusion that an appraisal provision requiring that one party demand appraisal in writing was not a condition precedent to suit, because "[i]f we eliminate the words, 'at the written request of either party,' we have, in terms, a provision for arbitration as a condition precedent to a right of action. If we restore the words, the provision is so modified that the arbitration is only to be had on request. Until there is a written request, neither party is compelled to arbitrate. "); *see also School Dist. No. 1 of Silver Bow County v. Globe & Republic Ins. Co. of Am.,* 146 Mont. 208, 404 P.2d 889, 892 (1965) ("While diversity of opinion exists on the point ..., we think it clear that under the above-quoted policy provisions the insured was not bound to comply with the appraisal clause prior to instituting this action on the policies, absent a demand for appraisal by the insurers. "). This reading of the appraisal provision of the policy is in accord with the plain meaning of the appraisal provision, which requires one party or the other to make a demand for appraisal before apprais-

al procedures are activated. *Morgan,* 534 N.W.2d at 99 (interpreting insurance contracts first according to their express and unambiguous terms).[8]

Thus, the court holds that, where appraisal is demanded by either party prior to suit, under a policy with the terms dictated by Iowa Code § 515.138(6), completion of the appraisal process is a precondition to a suit by either party. However, where no demand for appraisal is made before suit is filed, the suit cannot be barred as premature, because appraisal is not then a precondition to suit. No party in this case made a demand for appraisal prior to the filing of Terra's suit. Thus, appraisal was not a precondition to the present suit.

This is not to say, however, that appraisal is now precluded, because the court finds that whether appraisal is a precondition to suit is a different question from whether the filing of suit preempts or cuts off any recourse to the appraisal procedures, as Terra contends. The court will return to the latter question, which directly implicates the court's power to stay the litigation pending completion of the appraisal process, in section II. D.2, below.

### C. Fulfillment Of Preconditions To Suit

The court turns next to the question of whether Terra has complied with the requirements of the IRI Policy that must be met prior to filing suit. Although Terra has plainly allowed the IRI defendants access to the site and has provided substantial documentation of loss, disputes remain over compliance with other requirements of the IRI Policy regarding proof of loss and submission to examinations under oath.

#### 1. Proof of loss

█ It is undisputed that Terra did not submit a proof of loss form prior to filing this

---

8. Thus, the court rejects or distinguishes decisions holding that appraisal is a precondition to suit because the appraisal provision is tantamount to an agreement to arbitrate. *See Middlesex Mut. Assurance Co. v. Clinton,* 38 Conn.App. 555, 662 A.2d 1319, 1324 & 1326 (1995) (holding that a virtually identical appraisal provision constituted an agreement to arbitrate within the meaning of a Connecticut arbitration statute, and hence was a precondition to suit), *cert. denied,* 235 Conn. 922, 666 A.2d 1186 (Conn.1995); *see also Preferred Mut. Ins. Co. v. Martinez,* 643 So.2d 1101, 1102–03 (Fla.Dist.Ct.App.1994) (holding that a similar appraisal provision should be treated as an arbitration provision, and hence as "a condition precedent to recovery" under the insurance policies, and therefore the trial court erred in denying a motion to compel appraisal after suit was filed).

lawsuit. However, Terra contends that it nonetheless complied with the requirement to provide proof of loss not later than October 3, 1996, when it provided forty-seven boxes of documentation to the insurers. The IRI defendants counter that the forty-seven boxes, however detailed concerning Terra's losses, do not comply with the requirement that the proof of loss be "signed and sworn to by the insured." IRI Policy, Pt. 1, p. 2 (requirements in case loss occurs). Terra's reply to this argument is that it elevates form over substance.

The court need not resolve whether Terra's submission on October 3, 1996, constituted an adequate filing of proof of loss within the meaning of the IRI Policy, because the court finds that Terra did subsequently file a signed "Sworn Statement In Proof Of Loss" on April 17, 1997, six days after filing the present lawsuit. The defect in filing a proper proof of loss, if there was such a defect, was cured shortly after suit was filed. The court therefore turns to consideration of the other precondition to suit at issue here, whether Terra submitted to examinations under oath prior to filing suit.

### 2. Examinations under oath

■ One of the requirements of the "Requirements in case loss occurs" provision of the IRI Policy that this court has determined is a prerequisite to Terra's suit is that Terra "submit to examinations under oath by any person named by the Companies, and subscribe the same." IRI Policy, p. 3. It is undisputed that examinations under oath had not occurred prior to the filing of Terra's suit. However, in its resistance to the IRI defendants' motion to stay and in its own motion for a protective order, Terra contended that this requirement had been waived by the IRI defendants, because they had had ample opportunity to obtain such examinations under oath during the two-and-one-half-year period of investigation of Terra's claims. Terra also argued that such examinations are not "reasonably required," and hence are not permitted under the terms of the IRI Policy.

The court finds that dispute over examinations under oath was defused during oral arguments. At oral arguments, the IRI de-

fendants dropped any contention that they should be permitted unilateral discovery pursuant to the "examination-under-oath" provision of the IRI Policy. Instead, they stated that a reasonable course was for all examinations and inspections pursuant to the IRI Policy to have the "dual purpose" of discovery pursuant to the Federal Rules of Civil Procedure in the present litigation and that all such "dual purpose" discovery be conducted in accordance with the Federal Rules of Civil Procedure. Terra agreed that such a course was appropriate. Therefore, the court concludes that any dispute concerning examinations under oath as a precondition to suit is now moot. The court will incorporate the parties' agreement into this order by including the requirement that any production of documents or examinations under oath have the dual purpose of fulfilling the "Requirements in case loss occurs" provision of the IRI Policy and discovery in this litigation and that such disclosures of information be conducted according to the Federal Rules of Civil Procedure.

### D. Appraisal

The "fighting issue" that remains unresolved, despite resolution of the disputes about preconditions to suit, is whether the IRI defendants may compel Terra to pursue the appraisal process provided in the IRI Policy despite the fact that no demand for such appraisal was made until after Terra filed this lawsuit. The court concluded above that appraisal was not a precondition to suit, but the IRI defendants nonetheless contend that their demand for appraisal is timely and thus the litigation of measurement disputes should be stayed until the appraisal process has been completed. Terra offers alternative arguments that appraisal was not demanded within the time required by the IRI Policy, that the appraisal process is entirely preempted by the filing of its lawsuit, and that the IRI defendants have waived appraisal by failing to make a demand for appraisal within a reasonable time of the parties reaching an impasse over the amount of Terra's loss.

### 1. Untimely demand pursuant to the policy

Terra's first argument that appraisal cannot now be invoked is that the IRI defendants' demand for appraisal is untimely pursuant to the terms of the IRI Policy. The basis for this argument is Terra's contention that its submission of documents on October 3, 1996, was a filing of a proof of loss and that appraisal demands had to be made within thirty days of that date, relying on the paragraph of the IRI Policy and Iowa Code § 515.138(6) entitled "Companies' options." Alternatively, Terra contends that appraisal demands had to be made within sixty days of October 3, 1996, because the provision of the IRI Policy and Iowa Code § 515.138(6) entitled "When loss payable" requires that the claim be paid within sixty days of the filing of the proof of loss. As a further alternative, Terra contends that, if the effective date of its proof of loss was April 17, 1997, when it actually filed a sworn proof of loss, the IRI defendants' demand for appraisal, which was not made until July 23, 1997, when it was included in a reply brief filed in support of the motion for partial stay and opposition brief to Terra's cross-motion for protective order, was still too late, because that demand was made more than thirty or sixty days after the submission of the formal proof of loss.

#### a. The thirty-day deadline

■ Setting aside for the moment the issue of whether the clock started to run on a demand for appraisal on October 3, 1996, or April 17, 1997, the court must decide if there was any deadline for appraisal demands stated in the IRI Policy. Terra bases its contention that there was a thirty-day deadline on the following provision of the IRI Policy (and Iowa Code § 515.138(6)):

> **Companies' options.** It shall be optional with the Companies to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality

within a reasonable time, on giving notice of their intention to do so within thirty days after the receipt of the proof of loss herein required.

IRI Policy, p. 3. However, construing the policy as a whole, and giving the words used their ordinary, not technical meaning to achieve a practical and fair interpretation, *Morgan*, 534 N.W.2d at 99, the court readily concludes that this provision sets no time limit on when an appraisal must be demanded. Instead, it sets a deadline on when the IRI defendants were required to give notice of intent to take the property or to rebuild or replace it, at an agreed or appraised value. This provision does not even reasonably suggest that the appraisal must be demanded or completed prior to the companies' exercise of this option to take the property or rebuild or replace it.[9] The provision simply does not provide any thirty-day deadline from the proof of loss for an appraisal demand.

#### b. The sixty-day deadline

■ Nor is Terra's assertion of a sixty-day deadline satisfactory. That contention is based on another provision of the IRI Policy (and Iowa Code § 515.138(6)):

> **When loss payable.** The amount of loss for which the Companies may be liable *shall be payable sixty days after proof of loss*, as herein provided, is received by the companies *and ascertainment of the loss is made* either by agreement between the insured and the Companies expressed in writing or by the filing with the Companies of an award as herein provided.

IRI Policy, p. 4 (emphasis added). Again, applying appropriate rules of construction, *Morgan*, 534 N.W.2d at 99, the sixty-day deadline established by this provision is for *payment of the loss*, not for a demand for appraisal. Indeed, the provision expressly and unambiguously provides that the sixty-day deadline for payment does not begin to run until *two* events have happened: (1) filing of proof of loss; *and* (2) ascertainment of the loss is made. IRI Policy, p. 4. The ascertainment of loss in turn depends upon

---

9. Since the parties' conduct so plainly shows that everyone agreed to rebuild Terra's fertilizer plant before either of Terra's candidates for a proof of loss were submitted, this provision was clearly satisfied.

conclusion of either of two processes: agreement or an appraisal award. *Id.*

Thus, this provision establishes a sixty-day deadline for *payment* that begins to run only when appraisal, if properly demanded, has been *concluded.* Accord *Meineke v. Twin City Fire Ins. Co.*, 181 Ariz. 576, 892 P.2d 1365, 1371–72 (Ct.App.1994) (also rejecting the contention that the sixty-day payment period following proof of loss governs the timeliness of an appraisal demand, because the provision requires payment after proof of loss and either an agreement as to amount of loss, a final judgment, or an appraisal award, but "[t]his provision puts no limitation on when an appraisal demand is to be made. Its only relevance to appraisal is that the loss must be paid within 60 days after an appraisal award is filed if that means of settling the amount of loss is used.").[10] The provision clearly contemplates that the appraisal demand will be made after the proof of loss is filed, but does not set a deadline for that demand. Thus, Terra's sixty-day "deadline" for an appraisal demand is as much a chimera as its thirty-day deadline.[11]

#### c. The policy requirement

The court finds that the IRI Policy itself provides for an appraisal demand to be made when "the insured and the Companies shall fail to agree as to the actual cash value or the amount of loss." IRI Policy, p. 3 ("Appraisal"). This provision establishes the circumstances under which recourse to appraisal is appropriate, but sets *no specific deadline* for the appraisal demand. Thus, according to the terms of the policy, an appraisal demand is timely if it is made when the parties cannot agree as to the actual cash value and amount of loss. Although the "appraisal" provision, read literally, would permit an appraisal demand to be made at any time after the parties reached impasse, decisions of various courts interpret an "appraisal" clause lacking a specific time for demand to be made to require that the demand be made within a "reasonable" time. *See, e.g., Middlesex Mut. Assurance Co. v. Clinton,* 38 Conn.App. 555, 662 A.2d 1319, 1327 n. 14 (1995) (where suit was filed before an appraisal demand was made, although the court held that appraisal was tantamount to arbitration, and hence was a precondition to suit, the court also considered whether the insurer had waived its right to appraisal because of an "unjustifiable delay" in demanding it), *cert. denied,* 235 Conn. 922, 666 A.2d 1186 (1995); *Meineke v. Twin City Fire Ins. Co.,* 181 Ariz. 576, 892 P.2d 1365, 1371–72 (Ct. App.1994) (where an appraisal demand was

10. The Arizona Court of Appeals concluded in *Meineke* that appraisal demands must be within one year after the loss, because the policies involved necessarily contemplated a demand within a year after loss is incurred by requiring that a suit upon the policy be brought within that period. *Meineke,* 892 P.2d at 1372. However, because the parties to the present lawsuit waived the one-year-to-sue provision, they also waived any such limitation on a timely appraisal demand.

11. Of the decisions cited by Terra in support of a sixty-day deadline for a demand for appraisal, two, *Sevier v. United States Fidelity & Guaranty Co.*, 497 So.2d 1380 (La.1986), and *Atlas Assur. Co. v. Williams*, 158 Ga. 421, 123 S.E. 697 (1924), are unpersuasive. The *Sevier* decision involved "appraisal," "suit," and "when loss payable" provisions essentially identical to those present in the IRI Policy, and the court did conclude "that the demand for appraisal by USF & G was not made within sixty days of receipt of a satisfactory proof of loss, and that plaintiff was therefore not required to submit to the demanded appraisal procedure." *Sevier,* 497 So.2d at 1384. However, the decision does not explain how such a sixty-day deadline was derived, either by the trial court or the reviewing court. The *Atlas Assurance* decision opines that "[i]t was ... the duty of the insurance company to demand an appraisal within the prescribed sixty days, ... and the company, having waived its right to demand an appraisal, is estopped ... to complain that no appraisal was had." *Atlas Assur.,* 123 S.E. at 698. However, neither decision recognizes the significance of the fact that payment is not due sixty days after proof of loss, but sixty days after proof of loss and agreement or award on amount of loss. Thus, this court concludes that any supposed sixty-day deadline is contrary to or cannot be derived from the plain language of the policy. Terra's third decision, *Llerena v. Lumbermens Mut. Cas. Co.,* 379 So.2d 166 (Fla.Dist.Ct.App.1980), simply is not instructive: it holds that the time to demand an appraisal runs from the time an insurer admits liability, but the policy in question here states that the time to demand an appraisal is reached when the parties "fail to agree as to the actual cash value or the amount of loss," IRI Policy, p. 3 ("Appraisal"), as is explained more fully in the following section.

not made until ten days after suit was filed, and the appraisal provision did not set a specific deadline for a demand, the court considered whether the insurer had waived appraisal by an "unreasonable" delay before making such a demand); *Preferred Mut. Ins. Co. v. Martinez,* 643 So.2d 1101, 1102–03 (Fla.Dist.Ct.App.1994) (considering whether the insurer "unreasonably" delayed making a demand for appraisal, and hence waived appraisal, on the insurer's motion to dismiss the insured's suit and to compel appraisal); *Monroe Guaranty Ins. Co. v. Backstage, Inc.,* 537 N.E.2d 528, 529 (Ind.Ct.App.1989) (where suit was filed six weeks before an appraisal demand was made, and the policy stated no specific time within which a demand for appraisal must be made, the court considered whether the demand was made within a "reasonable" time); *Keesling v. Western Fire Ins. Co. of Fort Scott, Kan.,* 10 Wash.App. 841, 520 P.2d 622, 626–27 (1974) (considering whether an appraisal demand had been made within a "reasonable" time or waived where the demand for appraisal was not made until after suit was filed); *Hanby v. Maryland Cas. Co.,* 265 A.2d 28, 30 (Del. 1970) ("The policy does not state the time within which demand for appraisal must be made and it therefore must be made within a reasonable time," and this test was applied even where appraisal was not demanded until after suit was filed); *School Dist. No. 1 of Silver Bow County v. Globe & Republic Ins. Co. of Am.,* 146 Mont. 208, 404 P.2d 889, 892 (1965) (to determine whether an insured was required to proceed to appraisal where the insurer demanded appraisal after suit was filed, the court held that "[w]hen a policy of insurance containing an appraisal clause does not expressly or impliedly limit the time within which a demand for appraisal must be made, it is inferred that the parties contemplated that such demand must be made within a reasonable time after disagreement has arisen as to the amount of loss."). *See also Bard's Apparel Mfg., Inc. v. Bituminous Fire & Marine Ins. Co.,* 849 F.2d 245 (6th Cir.1988) (applying Tennessee law, the court considered whether an insurer who waited to demand appraisal until the insured gave notice of intent to file suit had unreasonably delayed and thus waived any demand for appraisal).

Before considering whether the IRI defendants made their demand within a "reasonable" time, however, the court must first consider Terra's contention that any demand for appraisal was preempted by the filing of its suit.

### 2. Preemption of appraisal by the filing of the lawsuit

■ Terra's second argument is that its filing of the present lawsuit before any demand for appraisal was made preempted or cut off any recourse to the appraisal process. Terra asserts that the silence of the IRI Policy as to whether suit preempts appraisal must be construed against the IRI defendants under the rule of *contra proferentem.*

■ The court can find little support for the proposition that the filing of a lawsuit necessarily cuts off recourse to the appraisal process, either in the language of the policy or in judicial decisions interpreting similar policies. Again, the rule of *contra proferentem,* if it remains viable under Iowa law for terms of insurance policies that are prescribed by statute, is only applicable when the policy terms are ambiguous. *Morgan,* 534 N.W.2d at 99 ("When the terms of an insurance policy are ambiguous, we will construe them against the insurer."); *Gracey,* 518 N.W.2d at 373 (courts construe the terms of a policy against an insurer when the terms of an insurance policy are ambiguous); *AMCO Ins. Co.,* 518 N.W.2d at 334 (applying the *contra proferentem* rule "[w]hen the meaning of terms of an insurance policy is susceptible to two interpretations"); *Farm & City Ins. Co.,* 509 N.W.2d at 490–91 (rule applies only when the policy terms are ambiguous or unclear); *Rich,* 204 N.W.2d at 872 ("Where insurance contracts are ambiguous, require interpretation, or are susceptible to equally proper constructions, the court will adopt the construction most favorable to the insured."); *The Travelers,* 434 N.W.2d at 134 (citing *Rich*). Although the policy is silent as to whether suit preempts appraisal, such silence does not necessarily amount to ambigu-

ity.[12] Rather, under the express terms of the policy, appraisal may be demanded when "the insured and the Companies shall fail to agree as to the actual cash value or the amount of loss." IRI Policy, p. 3 ("Appraisal"). Thus, the policy contemplates a demand for appraisal *at any time* after an impasse has been reached.[13] Such a condition may not occur until suit is filed. The proper question then becomes whether appraisal has been waived by failure to make an appraisal demand before suit was filed, not whether filing suit has "preempted" appraisal. This conclusion is in accord with decisions from various jurisdictions, cited above, holding that, when appraisal is not demanded until after suit is filed, the question is whether the demand for appraisal was waived or instead was made within a reasonable time after impasse was reached. *See, e.g., Middlesex Mut. Assurance Co.*, 662 A.2d at 1327 n. 14; *Meineke*, 892 P.2d at 1371–72; *Preferred Mut. Ins. Co.*, 643 So.2d at 1102–03; *Monroe Guaranty Ins. Co.*, 537 N.E.2d at 529; *Keesling*, 520 P.2d at 626–27; *Hanby*, 265 A.2d at 30; *School Dist. No. 1 of Silver Bow County*, 404 P.2d at 892. *See also Bard's Apparel Mfg., Inc.*, 849 F.2d at 245.

Terra cites two cases for the proposition that filing suit cuts off recourse to appraisal. The more recent of the two, a decision of the Wisconsin Court of Appeals, does not stand for so bald a proposition, because it includes the caveat that the insurer's right to demand appraisal after suit is filed is foreclosed only if the insurer had the opportunity to exercise the right to demand appraisal, but did not do so. *See Lynch v. American Family Mut. Ins. Co.*, 163 Wis.2d 1003, 473 N.W.2d 515 (App.1991) (holding that, "absent a policy provision to the contrary, an insurance company may not demand an appraisal of a loss after the commencement of an action by the insured on that loss *when the insurance company failed to demand the appraisal prior to the lawsuit even though it had an opportunity to do so*"; emphasis added). Thus, even under *Lynch*, the question remains whether the insurer had the opportunity to demand appraisal, or waived that opportunity through an unreasonable delay. In the older of the two decisions cited by Terra, the Seventh Circuit Court of Appeals held, in a decision applying Indiana law, that where the policy does not require appraisal as a precondition to suit, the trial court erred in staying the insured's lawsuit. *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1335 (7th Cir.1983).

**12.** Under Iowa contract law, " 'ambiguity exists if, after the application of pertinent rules of interpretation to the policy words, a genuine uncertainty exists as to which of two or more meanings is the proper one.' " *Jensen*, 510 N.W.2d at 871 (quoting *Connie's Constr. Co., Inc. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975)); *Motor Club of Iowa Ins. Co. v. Iowa Mut. Ins. Co.*, 508 N.W.2d 634, 636 (Iowa 1993); *A.Y. McDonald Indus., Inc.*, 475 N.W.2d at 619. "However, the mere fact that the parties disagree on the meaning of a particular term does not establish ambiguity." *Morgan*, 534 N.W.2d at 99. The court must "not give a strained or unnatural reading to the words of the policy to create ambiguity where there is none." *Morgan*, 534 N.W.2d at 99. The rule of interpretation that the court finds eliminates any ambiguity in this case is consideration of the express terms of the policy, *id.*, which removes any uncertainty as to which meaning is the proper one. *Jensen*, 510 N.W.2d at 871.

Furthermore, looking to rules of statutory interpretation, which this court has opined are more appropriate than rules of contract interpretation when contract terms are prescribed by statute, the Iowa Supreme Court has observed that courts "must look at what the legislature said rather than what it should or might have said." *Johnson v. Johnson*, 564 N.W.2d 414, 417 (Iowa 1997) (citing *Iowa R.App. P.* 14(f)(13); *Le Mars Mut. Ins. Co. v. Bonnecroy*, 304 N.W.2d 422, 424 (Iowa 1981)). Of course, the Iowa legislature might have said whether suit precluded appraisal, but it did not do so. Thus, it would be improper under Iowa rules of statutory interpretation to conclude from the absence of a statement on the preemptive effect of suit on appraisal that what the legislature intended or should have said was that filing suit preempts appraisal. What the legislature said is that appraisal may be demanded when the parties "fail to agree as to the actual cash value or the amount of loss." IRI Policy, p. 3 ("Appraisal").

**13.** The word "impasse" does not appear anywhere in the IRI Policy as a precondition for a demand for appraisal. Throughout this opinion, the court has used the word "impasse" as a convenient shorthand for what the policy actually provides, which is that the demand for appraisal may be made by either party when the parties "shall fail to agree as to the actual cash value or the amount of loss." IRI Policy, p. 3 ("Appraisal"). The court and the parties used "impasse" in this way during oral argument, and the court will continue to do so here.

However, that decision is now out of step with the holding of the Indiana Court of Appeals in *Monroe Guaranty Ins. Co. v. Backstage, Inc.*, 537 N.E.2d 528, 529 (Ind.Ct. App.1989), which holds that where a demand for appraisal is not made until after suit is filed, the question is whether the demand is unreasonably delayed, not whether the policy requires appraisal as a precondition to suit.

▮ This court agrees with the Montana Supreme Court and Washington Court of Appeals that

> [w]hile authority can be found for the proposition that institution of suit by the insured serves to cut off the insurer's right to demand appraisal (*Littrell v. Allemania Fire Ins. Co.*, 250 N.Y. 628, 166 N.E. 350; *Davis v. Imperial Ins. Co.*, 16 Wash. 241, 47 P. 439(189)), we think that the better view is that the inconvenience of bringing suit is just one circumstance to be considered in determining whether a delay in demanding appraisal was unreasonable, that is, whether inconvenience suffered was sufficient to justify a refusal to proceed under the appraisal provision of the policy. *Stephens v. Union Assur. Soc.*, 16 Utah 22, 50 P. 626 (1897).

*School Dist. No. 1 of Silver Bow County*, 404 P.2d at 893; *Keesling*, 520 P.2d at 627–28 (quoting *School Dist. No. 1 of Silver Bow County*, and stating that "the election of the insured to file suit could not deprive the insurer of its right to appraisal under the policy").

Under Terra's proffered rule—a rule that the filing of a lawsuit always preempts appraisal—an insured could *always* prevent appraisal by filing a proof of loss and immediately filing suit. Such a suit would be the insured's unilateral declaration that impasse had been reached and might be the insurer's first notice that negotiations had broken down. If this were the rule, the insurer's only means to defeat the insured's "preemptive strike" lawsuit and to ensure appraisal of losses would be a "preemptive strike" of its own: The insurer would have an incentive to

hasten to declare an impasse and demand appraisal, perhaps even before final proof of loss is filed, to prevent the insured from filing suit first.[14] Surely such "preemptive strike" lawsuits by one party and preemptive declarations of impasse and demands for appraisal by the other were not what either the legislature or the parties intended when the policy in question, as prescribed by statute, provides for appraisal as a means to resolve disputes when the parties "fail to agree as to the actual cash value or the amount of loss," IRI Policy, p. 3 ("Appraisal"), and the policy further provides that loss is not payable until "sixty days after proof of loss ... is received by the companies *and ascertainment of the loss is made* either by *agreement* between the insured and the Companies expressed in writing or by the filing with the Companies of an [appraisal] *award* as herein provided." IRI Policy, p. 4 (emphasis added). The court cannot read the IRI Policy or the statute upon which it is based to create an incentive for either party to declare an impasse and either file suit or demand an appraisal to prevent the other party from selecting the initial forum for determining amount of loss, when agreement between the parties is always the preferred method for determining amount of loss. Thus, foreclosing the effectiveness of such "preemptive strikes" by either the insured or the insurer is, to this court's thinking, another sufficient rationale for the holdings of so many courts that, even when suit has been filed, the question is whether a subsequent appraisal demand has been made within a reasonable time of reaching impasse. *See, e.g., Middlesex Mut. Assurance Co.*, 662 A.2d at 1327 n. 14; *Meineke*, 892 P.2d at 1371–72; *Preferred Mut. Ins. Co.*, 643 So.2d at 1102–03; *Monroe Guaranty Ins. Co.*, 537 N.E.2d at 529; *Keesling*, 520 P.2d at 626–27; *Hanby*, 265 A.2d at 30; *School Dist. No. 1 of Silver Bow County*, 404 P.2d at 892. *See also Bard's Apparel Mfg., Inc.*, 849 F.2d at 245.

Therefore, the court cannot hold as a matter of law that the filing of Terra's suit preempted any recourse to appraisal. Rath-

---

**14.** The roles of the parties could, of course, be reversed: The insurer could file a preemptive declaratory judgment action to preempt any attempt by the insured to demand appraisal, and the insured would only be able to prevent such a suit by unilaterally declaring an impasse and demanding appraisal at the first hint of disagreement.

er, the court must consider whether the IRI defendants waived appraisal—i.e., whether their demand for appraisal was made within a reasonable time after impasse was reached.

### 3. *Waiver of the right to demand appraisal*

██ Finally, Terra contends that the IRI defendants have waived appraisal by waiting an unreasonable time after impasse was reached on amount-of-loss issues to make any demand for appraisal. Terra contends that there was ample time for the IRI defendants to demand appraisals during the two-and-one-half years following the explosion when the parties were in daily contact, and evident dispute, about the actual cash value and amount of various of Terra's loss. Although the IRI defendants contend that they repeatedly reserved the right to demand an appraisal, Terra asserts that it kept advising the IRI defendants that it believed any right of appraisal had been waived. The IRI defendants contend that they had no reasonable opportunity to demand an appraisal, because Terra filed suit before an impasse was reached, or at least, before it was apparent to them that an impasse had been reached, on measurement of losses. They argue that their demand for appraisal was made within a reasonable time after the parties reached an obvious impasse with the filing of Terra's suit and hence the litigation should be stayed to permit recourse to appraisal.

There is some dispute between the parties over whether Terra bears the burden of proving a waiver by the IRI defendants, or whether the IRI defendants bear the burden of proving that they did *not* waive appraisal. Terra cites in support of its argument the venerable decision of the Eighth Circuit Court of Appeals in *Kahnweiler v. Phenix Ins. Co. of Brooklyn,* 67 F. 483 (8th Cir.1895), *cert. denied,* 163 U.S. 691, 16 S.Ct. 1202, 41 L.Ed. 311 (1895), in which the court made passing reference to a decision of the Wisconsin Supreme Court holding that where a defendant has made no demand for appraisal, the defendant " 'must be presumed to have waived it.' " *Kahnweiler,* 67 F. at 489 (quoting Phoenix *Insurance Co. v. Badger,* 53 Wis. 283, 10 N.W. 504 (1881)). Yet, when consid-

ering waiver of other provisions of an insurance contract, the Iowa Supreme Court has required the party asserting waiver to bear the burden of proof. *See, e.g., Met–Coil Sys. Corp. v. Columbia Cas. Co.,* 524 N.W.2d 650, 654 (Iowa 1994) (a party seeking to escape the effect of provisions of an insurance policy must prove that compliance was excused or waived, or that disregarding the terms of the policy would not prejudice the other party); *American Guarantee & Liab. Ins. Co. v. Chandler Mfg. Co., Inc.,* 467 N.W.2d 226, 228 (Iowa 1991) (same). The court need not resolve this question, however, because on the record in this case, the court finds that the allocation of the burden of proof is not dispositive.

The Iowa Supreme Court has held that an insurer may waive provisions of an insurance policy. *Scheetz v. IMT Ins. Co.,* 324 N.W.2d 302, 304 (Iowa 1982). The Iowa Supreme Court explained,

> We have defined waiver as "the voluntary or intentional relinquishment of a known right." *Travelers Indemnity Co. v. Fields,* 317 N.W.2d 176, 186 (Iowa 1982). Waiver can be shown by the affirmative acts of a party, or can be inferred from conduct that supports the conclusion waiver was intended. *Continental Casualty Co. v. G.R. Kinney Co., Iowa,* 258 Iowa 658, 660, 140 N.W.2d 129, 130 (1966). When the waiver is implied, intent is inferred from the facts and circumstances constituting the waiver. *Id.*
>
> * * *
>
> It is unnecessary, in order to constitute a waiver, that the facts be such as would support a plea of estoppel. *Briney v. Tri–State Mutual Grain Dealers Fire Insurance Co.,* 254 Iowa 673, 684, 117 N.W.2d 889, 895 (1962). The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and the intention to relinquish such right. *Perkins v. City National Bank of Clinton,* 253 Iowa 922, 935, 114 N.W.2d 45, 52 (1962).

*Scheetz,* 324 N.W.2d at 304. Although whether a waiver has occurred is generally a question of fact for the jury, "in particular whether acts and conduct are relied upon as the basis for the waiver," the Iowa Supreme

Court has also concluded that "[w]hen the evidence is undisputed ... the issue is one of law for the court." *Id.* Other courts have recognized that waiver is usually a matter of fact, but that the court may determine whether appraisal has been waived as a matter of law, at least in part as a matter of practicality, because the question arises at the preliminary stages of litigation. *See Keesling,* 520 P.2d at 628 ("The determination of the timeliness of the demand, in this case, was for the court," citing *Hamilton v. Phoenix Ins. Co. of Hartford,* 61 F. 379 (6th Cir.1894), and *School Dist. No. 1 of Silver Bow County,* 404 P.2d at 893); *Hanby,* 265 A.2d at 31 ("Plaintiff also argues that the question of waiver [of appraisal] was a factual one for jury determination. That is true as a general proposition but in the context of this case the question is entirely one of law. Whether [the insurer] has a contract right to have the amount of loss determined by appraisal preliminary to the filing (or prosecution) of an action was fairly and necessarily addressed to the Court at the pretrial stage. And, obviously, at that time only the Court could determine whether the case should be stayed pending appraisal.").

The decisions of other jurisdictions provide insight into the factors the court should consider in determining whether an insurer has waived appraisal by failing to demand it prior to the filing of a lawsuit by the insured. In deciding whether a demand for appraisal was made within a reasonable time, and consequently has not been waived even if suit was filed before the demand was made, courts have considered the timeliness of the demand in light of the circumstances as they existed at the time the demand was made. *Meineke,* 892 P.2d at 1371. Pertinent circumstances include (1) the time between the breakdown of good faith negotiations concerning the amount of the loss suffered by the insured and the appraisal demand; and (2) whether there would be any prejudice to the other party resulting from the delay in demanding an appraisal. *Meineke,* 892 P.2d at 1371; *Monroe,* 537 N.E.2d at 529; *School Dist. No. 1,* 404 P.2d at 893; *Keesling,* 520 P.2d at 628.

As to the time between the breakdown of negotiations and the demand for appraisal, the Arizona Court of Appeals found that an appraisal demand had been unreasonably delayed when the insurer waited about two months from the time that negotiations halted or at least slowed considerably before demanding an appraisal. *Meineke,* 892 P.2d at 1372. On the other hand, a Florida court recently held that, where an insurer failed to request appraisal during lengthy negotiations, but made such a demand in response to the insured's complaint, the trial court erred by denying the insurer's motion to compel appraisal, because the insurer had not waived appraisal by acting inconsistently with that right at any point in the proceedings or by unreasonable delay. *Preferred Mut. Ins. Co.,* 643 So.2d at 1102. Other decisions suggest that the range of "reasonable" delays may span several months, depending on the circumstances. *See, e.g., F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.,* 906 F.Supp. 30 (D.Mass.1995) (the insurer's demand for appraisal was timely when it was asserted as an affirmative defense in answer to the insured's complaint and the court concluded that appraisal was a condition precedent to any lawsuit); *Monroe,* 537 N.E.2d at 529 (an appraisal demand was timely more than six months after the failure of good-faith negotiations where there was no prejudice to the insured from the delay); *Keesling,* 520 P.2d at 627 (an appraisal demand was timely when it was made several weeks after suit was filed, where "as the record shows, until the insured filed suit, the frame of mind of both parties welcomed additional communications and negotiations rather than confrontations"); *Hanby,* 265 A.2d at 30–31 (where a demand for appraisal was made approximately three weeks after suit was filed, the court held the demand was timely, because the court found the parties were negotiating at least until one month before suit was filed).

On the undisputed facts in the record, the court finds, first, that the parties continued to negotiate amount-of-loss questions into the Spring of 1997. Although Terra asserts that intractable disputes as to certain amount-of-loss questions occurred as early as 1995, and that the IRI defendants could and should have demanded appraisal then, the court does not read the IRI Policy to contemplate such piecemeal recourse to appraisal. Rath-

er, the policy suggests a final failure to agree on the amount of loss on the whole claim. IRI Policy, p. 3 ("Appraisal") (the demand for appraisal may be made by either party when the parties "shall fail to agree as to the actual cash value or the amount of loss."). Although Terra asserts that firmly adverse positions had been taken not later than March of 1997, the undisputed record establishes that Terra and its insurers continued to attempt negotiations even after suit had been filed.[15] The IRI defendants should not be penalized for engaging in continuous discussions with Terra to determine the amount of loss instead of demanding an appraisal.

Second, the court finds that the criteria for demanding an appraisal, "fail[ure] to agree as to the actual cash value or the amount of loss," IRI Policy, p. 3 ("Appraisal"), did not occur until Terra refused to schedule any more meetings to discuss or attempt to agree upon the amount of loss, which did not occur until approximately the time Terra filed this lawsuit. Before Terra filed suit, the IRI defendants had no notice that an impasse had been reached, because only the filing of Terra's suit demonstrated Terra's unilateral conclusion that the parties were at an impasse when the IRI defendants still anticipated further discussions. Nor did the IRI defendants have any reasonable opportunity to demand appraisal based on that impasse, because Terra's expression of its belief that impasse had been reached was the filing of the suit itself and cancellation of scheduled discussions of the amount of its claim.

Furthermore, since the suit was filed, there have been overtures from the IRI defendants, and indications from Terra, of a willingness to reopen discussions on the amount of loss. Such continuing indications of a willingness to seek agreement on amount-of-loss issues made any delay by the IRI defendants in demanding an appraisal, instead of demanding appraisal immediately after suit was filed, reasonable under the circumstances.

Thus, although the time between the filing of suit and the demand for appraisal was longer than that in *Preferred Mut. Ins. Co.,* 643 So.2d at 1102, and at least as long as the period found unreasonable in *Meineke,* 892 P.2d at 1372, the proper point of reference is not when suit was filed, but when impasse was reached. Furthermore, the claims involved in this litigation are of unprecedented size and complexity, such that it is much more difficult to recognize the point at which impasse has been reached on the amount of loss rather than just disagreement about the value of a particular, discrete portion of the claim. The circumstances in this case simply do not suggest that the parties had abandoned negotiation and reached an impasse an unreasonably long time before the IRI defendants demanded appraisal, because overtures to resolve disputes by negotiation and agreement continued even after suit was filed. The court cannot find as a matter of law from the undisputed facts that the IRI defendants had any intention to relinquish their right to pursue the appraisal process. *Scheetz,* 324 N.W.2d at 304. If the question is whether a party bearing the burden of proof on the waiver issue has carried that burden, the court concludes Terra has not proved a waiver, if it was obligated to do so, the IRI defendants have met their burden, if they were required to do so, of proving that they did not waive appraisal, based on any allegedly unreasonable delay in demanding appraisal.

Although the Iowa Supreme Court did not include prejudice to the party asserting a waiver as part of its analysis of waiver of other provisions of an insurance contract,[16] various out-of-state jurisdictions do include such prejudice as a factor in the analysis of a claim of waiver of appraisal. *See Meineke,* 892 P.2d at 1371; *Monroe,* 537 N.E.2d at

---

**15.** Thus, the court need not pursue the disputed question of whether the IRI defendants effectively reserved their right to demand appraisal and whether Terra's alleged repudiation of those reservations put the IRI defendants on notice that the parties were at an impasse, because the parties' actions are more informative than their posturing.

**16.** The decision of the Iowa Supreme Court in *Scheetz* does not mention such a consideration in a waiver analysis, although the court was not considering asserted waiver of an appraisal provision, but waiver of certain notice provisions. *Scheetz,* 324 N.W.2d at 304.

529; *School Dist. No. 1,* 404 P.2d at 893; *Keesling,* 520 P.2d at 628. If prejudice to Terra is required to demonstrate the unreasonableness of the IRI defendants' delay in demanding appraisal, Terra has demonstrated none flowing from the IRI defendants' delay in demanding appraisal while negotiations continued.

Terra contends that it is prejudiced by the delay in a demand for appraisal, because what was to be appraised is no longer there, citing the decision of the Sixth Circuit Court of Appeals in *Bard's Apparel,* 849 F.2d at 249. In *Bard's Apparel,* the court noted that the damaged property of the insured had been disposed of in the interim between the filing of the claim and the demand for appraisal. *Id.* The court found that appraisal would have to proceed without the presence of the subject matter, and under those circumstances, the delay in demanding appraisal was unreasonable. *Id.* However, in this case, the court is not persuaded that the disposal of Terra's damaged property is attributable to any delay by the IRI defendants. Rather, it is undisputed that Terra demanded a cessation of claims evaluation to allow it to rebuild and repair the premises as rapidly as possible. Furthermore, the court is not persuaded that the absence of the damaged property necessarily will prejudice Terra, because Terra is willing to have a jury, composed of laypersons, not appraisal experts, determine the amount of loss, in the absence of the actual damaged property, based on evidence that still exists.

On the undisputed facts that the parties attempted to continue negotiations immediately before and even after suit was filed, and the absence of any evidence of prejudice to Terra from the delay, the court concludes that there was no waiver of appraisal in this case. *Scheetz,* 324 N.W.2d at 304. In the alternative, the court concludes that if Terra bears the burden of proving a waiver by the IRI defendants, it has failed to do so, and if the burden is properly on the IRI defendants to defeat a "presumption" of waiver, they have certainly done so.

### 4. Protective order

■ Terra nonetheless asserts that a protective order precluding the IRI defen-dants from pursuing appraisal is appropriate in this case. Terra contends that appraisal would be pointless, first, because the parties are already and irrevocably headed for litigation anyway, and second, because the remaining disputes are coverage disputes, not measurement disputes, and thus are not amenable to appraisal. The IRI defendants, however, contend that there has been no denial of ultimate liability, such that coverage is the central dispute between the parties; rather, some or all of the disputes are disputes of measurement of Terra's covered losses, which are amenable to resolution or narrowing by use of the appraisal process. The IRI defendants assert that the appraisal process will ultimately result in significant judicial economy and economy to the parties when everything that can be resolved by appraisal procedures has been so resolved, and only issues truly requiring judicial intervention will be brought before the court.

■ The court does not believe this is truly a "discovery" dispute within the meaning of FED. R. CIV. P. 26(c). The court deems a more plausible basis for relief from the appraisal provisions of the IRI Policy is stated in *Met–Coil Sys. Corp. v. Columbia Cas. Co.,* 524 N.W.2d 650 (Iowa 1994), and *American Guarantee & Liab. Ins. Co. v. Chandler Mfg. Co., Inc.,* 467 N.W.2d 226 (Iowa 1991). In *Met–Coil,* the court reiterated the rule that a party seeking to escape the effect of provisions of an insurance policy must prove that compliance was excused or waived, or that disregarding the terms of the policy would not prejudice the other party. *Met–Coil Sys. Corp.,* 524 N.W.2d at 654. *Accord American Guarantee & Liab. Ins. Co.,* 467 N.W.2d at 228. Terra has offered no excuse from compliance and the court has found no waiver. Thus, the question under *Met–Coil* is whether the IRI defendants would be prejudiced by relieving Terra of participation in the appraisal process, not whether Terra would be prejudiced or unduly burdened by pursuit of the process, which is the analysis under Rule 26(c).

The rule upon which Terra relies provides that the court may enter a protective order disallowing or limiting discovery where jus-

tice so requires "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). Assuming that the court has the power to issue a protective order pursuant to FED. R. CIV. P. 26(c) excusing Terra from the appraisal process outlined in the IRI Policy, the court will not do so in this case. The court is not persuaded that Terra is unduly burdened because appraisal would be "pointless," or that none of the remaining disputes between the parties is amenable to at least partial resolution or narrowing through the appraisal process provided in the IRI Policy. Surely everyone who felt the tremors from the explosion of the Terra plant on the morning of December 13, 1994, realized that litigation was inevitable, and surely everyone who was aware of the size of the loss alleged by Terra would understand that litigation was very likely between Terra and its insurers, over some measure of loss or coverage issue, even had the parties been the most cooperative of insurers and insureds ever. Yet, even if litigation was inevitable, this is no ground finding that appraisal would be unduly burdensome, particularly when appraisal is endorsed by the pertinent insurance policy and favored by both the Iowa legislature and the Iowa Supreme Court as a means for narrowing disputes that may ultimately have to be resolved in litigation. *See* Iowa Code § 515.138(6); *Central Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257, 260 (Iowa 1991) (the appraisal process in the standard fire policy "serves as an inexpensive and speedy means of settling disputes over matters such as the amount of loss and value of the property in question"). Furthermore, Terra's characterizations notwithstanding, many of the remaining disputes between the parties do indeed involve measurement questions that are amenable to appraisal.

▇▇▇ Nor does the court find that there is any prejudice to or undue burden upon the parties if the court does not first determine all coverage issues before the parties turn to appraisal. First, the IRI Policy simply does not contemplate such judicial intervention before appraisal; rather, it contemplates appraisal in the first instance if the parties fail to agree on amount of loss. IRI Policy, p. 3 ("Appraisal"). An *en banc* Florida District Court of Appeals has also considered whether determination of coverage issues should necessarily be made before pursuit of the appraisal process:

> Nor do we agree with the insured that the trial court erroneously ordered the appraisal to proceed before its determination of any coverage issue. In support of this contention, the argument is made that it is unfair to require the insured, as the appraisal clause provides, to bear his share of the costs of the appraisal, if it is later determined that there is no coverage and that he is therefore entitled to nothing. The simple answer is that both the insured and the carrier have specifically agreed to these costs which are just as necessary to the processing of the claim as the filing fee or the cost of submitting proofs of loss. There is no reason therefore for relieving either the insured or the carrier of that obligation.
>
> Far more importantly, the rule espoused by the insured—that in every case coverage questions must be resolved by the court before arbitration—might have severely adverse effects on the expeditious, out of court disposition of litigation, which is the very reason that arbitration is such a favored remedy.... In many, perhaps most, of these cases the most contentious and significant issue is just the appraisable one of damages. We have already noted that
>
>> a great deal of judicial resources might otherwise be required in resolving the factual and legal issues involved in the [coverage question might] be saved at the threshold by a relatively swift and ·informal decision by the appraisers as to the amount of loss.
>
> [citation omitted.] Moreover, the "coverage first" rule might inefficiently require insurers to litigate even tenuous coverage defenses because of an unavoidable uncertainty as to their ultimate exposure. Such a waste of economic and judicial resources should not be encouraged.

*Paradise Plaza Condominium Assn., Inc. v. The Reinsurance Corp. of N. Y.*, 685 So.2d

937, 941 (Fla.Dist.Ct.App.1996) (*en banc*) (citations omitted).[17]

Moreover, if the proper standard is that stated in *Met–Coil,* rather than in FED. R. CIV. P. 26(c), real prejudice to the IRI defendants, and probably to all of the parties, could arise from foregoing appraisal as a means of making litigation more focused and hence less expensive. *Cf. Met–Coil Sys. Corp.,* 524 N.W.2d at 654 (reiterating the rule that a party seeking to escape the effect of provisions of an insurance policy must prove that compliance was excused or waived, or that disregarding the terms of the policy would not prejudice the other party). Consequently, the court will also deny Terra's motion for a protective order precluding use of the appraisal procedures in the IRI Policy.

### 5. Power to stay proceedings in part pending appraisal

Because the court has determined that the IRI defendants have not waived the appraisal provisions of the IRI Policy and have instead made a reasonably timely demand for appraisal, and the court has further determined that it will not issue a protective order barring use of the IRI Policy's appraisal procedures, the court must return to the question of its power to issue a partial stay of proceedings. As the court held above, the court has the inherent power to stay proceedings and enforce appraisal in order to control its docket, conserve judicial resources, and provide for a just determination of a case pending before it. *See, e.g., Lunde,* 898 F.2d at 1345; *Webb,* 800 F.2d at 808; *City of Bismarck,* 767 F.2d at 433; *Contracting Northwest, Inc.,* 713 F.2d at 387. Although the court does not believe it would have the power to order such a stay absent a timely demand for appraisal, because the appraisal provision requires a demand by one of the parties to become operable, where such a timely demand has been made, the court does have the inherent power to enforce recourse to the appraisal procedures

before litigation may continue on amount-of-loss questions. Furthermore, the court finds the exercise of that power is appropriate in this case.

What, then, should be stayed? At oral arguments, the IRI defendants withdrew their request, in subsection (a) of the prayer to their motion for a partial stay, that the court stay substantive proceedings and instead requested that the court allow them a reasonable time within which to move or plead to the complaint. Without waiving its objections to appraisal, Terra agreed to such a reasonable period to move or plead. The court agrees that such a course is appropriate, particularly when measurement claims are not the only ones presented in Terra's complaint. Next, as indicated above in reference to resolution of the question of examinations under oath, the IRI defendants request, and Terra does not object to, "dual purpose" discovery and loss determination methods in the IRI Policy if both are conducted jointly and in accordance with the Federal Rules of Civil Procedure. This agreement supersedes subsections (b), (c), and (e) of the IRI defendants' prayer for relief on their motion for partial stay, which pertained to examinations under oath, production of records, and discovery in the lawsuit, respectively. In the event a stay was granted, the parties agreed that the court should set a reasonable time for Terra to appoint its appraiser. Appointment of an umpire would then proceed according to the terms of the IRI Policy. This agreement superseded subsection (d) of the IRI defendants' prayer for relief on their motion for partial stay, which pertained to the mechanics of the appraisal procedure, if appraisal was enforced. The court's preliminary disposition of questions concerning the scope of appraisal, the subject of subsection (f) of the prayer to the IRI defendants' motion, are considered in the next subsection.

### 6. Scope of appraisal

The parties have devoted some of their briefing to the issue of what portions of

---

**17.** The court takes issue with the rationale of the Florida court only insofar as this court would state that the simple answer to the contention that a party should be spared the cost of appraisal if there is a chance that he will be entitled to nothing on coverage grounds is that the *legisla-* ture so provided, not that the parties have agreed to such costs. The legislature thus contemplated the costs of appraisal would be as necessary (and reasonable) a part of processing the claim as the filing fee or the cost of submitting proofs of loss.

Terra's claims are amenable to appraisal and which involve coverage disputes. However, the court concludes that it need not reach that issue on the present motions, because the viability, not the scope, of the appraisal procedures was the issue in the motions presently before the court. Furthermore, the IRI Policy itself establishes, at least initially, the scope of appraisal:

> **Appraisal.** *In case the insured and the Companies shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire....* The appraisers shall then *appraise the loss,* stating separately *actual cash value and loss to each item*; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with the Companies shall *determine the amount of actual cash value and loss....*

IRI Policy, p. 3 ("Appraisal") (emphasis added). Thus, the plain meaning of the appraisal provision, *Morgan,* 534 N.W.2d at 99, is that the appraisal process determines "amount of actual cash value and loss," not legal questions of coverage. At this time, the court need only order the parties to pursue appraisal according to the terms of the IRI Policy.

██ The court is not unmindful that there may be legitimate disputes over what is a cash value or amount-of-loss question and what is a coverage question and that this court may ultimately be required to make such determinations for the parties. However, before the court makes any determinations of what is a coverage dispute and what is an amount-of-loss question, the court will require the parties to attempt to pursue appraisal without judicial interference. Furthermore, one matter the parties have not yet briefed in detail is whether the appraisers or the umpire should determine, in the

first instance, the scope of appraisal, including initial determinations of what is a cash value or amount-of-loss question and what is a coverage question beyond the scope of appraisal. When intractable disputes arise over what issues are properly within the scope of appraisal, the parties may move the court for a determination.

### E. Certification For Interlocutory Appeal

██ At the oral arguments, the court raised the question of whether this ruling on the motion to stay and motions for protective orders, however decided, should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). That statute provides, in pertinent part, as follows:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). As the Eighth Circuit Court of Appeals has observed, the statute provides for certification of controlling questions of law by the district court for interlocutory appeal in circumstances where an appeal is otherwise unavailable. *City of Fort Madison, Iowa v. Emerald Lady,* 990 F.2d 1086, 1088 n. 4 (8th Cir.1993). However, the appellate court must, upon certification, decide, in its discretion, whether to permit the appeal on the question certified. *Id.*[18]

18. Because § 1292(b) provides for appeal of orders otherwise unappealable, and thus provides an avenue for resolving disputed and controlling questions of law, the resolution of which will materially further the litigation, the appellate court reviews *de novo* the questions of law certi-

608

In a recent decision, the Eighth Circuit Court of Appeals considered the standards applicable to an interlocutory appeal pursuant to § 1292(b). *See White v. Nix,* 43 F.3d 374 (8th Cir.1994). The court held that "[t]he requirements of § 1292(b) are jurisdictional," and the statute should be used with care to avoid piece-meal appeals. *White,* 43 F.3d at 376. Thus, the court stated that § 1292(b) " 'should and will be used only in exceptional cases where a decision on appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases.' " *Id.* (quoting S.Rep. No. 2434, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5260). Thus, the statute should be used "sparingly" and the burden, on the movant, is a heavy one to show that the case is an "exceptional" one in which immediate appeal is warranted. *Id.* Nonetheless, the court's grant of interlocutory appeal is reviewed for abuse of discretion. *Id.* (finding abuse of discretion in that case in failure to consider whether the appeal involved a controlling question of law.).

The Eighth Circuit Court of Appeals has repeatedly stated that the statute establishes three requirements for interlocutory appeal:

[S]ection 1292(b) provides that if a district court certifies that an "order involves [1] a controlling question of law as to which there is [2] a substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation[,] ... [t]he Court of Appeals ... may thereupon, in its discretion, permit an appeal to be taken from such order."

*S.B.L. v. Evans,* 80 F.3d 307, 310 (8th Cir. 1996); *White,* 43 F.3d at 377 (reiterating that § 1292(b) establishes three criteria that must be met for certification by the court: "the

district court must be 'of the opinion that' (1) the order 'involves a controlling question of law'; (2) 'there is substantial ground for difference of opinion'; and (3) certification will 'materially advance the ultimate termination of the litigation.' "). In addition to these three requirements, however, the court has also observed that

"[i]nherent in these requirements is the concept of ripeness." *Paschall v. Kansas City Star Co.,* 605 F.2d 403, 406 (8th Cir. 1979). In other words, even if all three requirements are satisfied, the factual basis for a claim must be developed so that "we can make a precise decision upon a precise record—not an abstract answer to an abstract question." *Id.* at 407. "The record before us should assure us that the legal issue has arisen and exactly how the problem arose before we fashion a response." *Id.*

*S.B.L.,* 80 F.3d at 310–11. Thus, the court noted that in *Paschall,* it had dismissed an interlocutory appeal, not because the district court erred in certifying the matter, but because "[a]fter review the court realized that resolution of the difficult legal issue required '[a] more complete factual and legal development in the district court' " and because " 'once factual and legal development of this case [wa]s completed..., the decision requested of us may no longer be necessary.' " *S.B.L.,* 80 F.3d at 311 (quoting *Paschall,* 605 F.2d at 407). Similarly, in *S.B.L.,* the court concluded that interlocutory appeal had been improvidently granted in that case, because factual issues bearing on the framing and formulation of the legal questions were unresolved. *Id.*

The court is of the opinion that this decision presents an "exceptional case" in which immediate interlocutory appeal should be

fied by the district court. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). The nature and scope of the appellate court's review is not rigidly determined by the certified questions, however. Id. (citing *In re Oil Spill by the Amoco Cadiz,* 659 F.2d 789, 793 n. 5 (7th Cir.1981)). The appellate court

remain[s] free to consider " ' "such questions as are basic to and underlie" ' " the questions certified by the district court. *[In re Oil Spill by the Amoco Cadiz,* 659 F.2d at 793 n. 5]

(quoting *Helene Curtis Indus., Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1335 (7th Cir.1977) (quoting 9 J. Moore, *Moore's Federal Practice* ¶ 110.25[1], at 270)); *Merican, Inc. v. Caterpillar Tractor Co.,* 713 F.2d 958, 962 n. 7 (3d Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir. 1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

*Simon,* 816 F.2d at 400.

permitted. *White*, 43 F.3d at 377. This court is of the opinion that this order involves controlling questions of law, specifically, interpretation of the IRI Policy, whose terms are prescribed by Iowa Code § 515.138(6), the question of preemption of appraisal under the policy by the filing of Terra's suit, as well as the question of waiver of appraisal, construed as a question of law by this court. 28 U.S.C. § 1292(b); *S.B.L.*, 80 F.3d at 310; *White*, 43 F.3d at 377. It is also clear to the court that "there is substantial ground for difference of opinion," *id.*, since there is some contrary authority on each of these questions, as detailed above. Finally, certification will "materially advance the ultimate termination of the litigation," *id.*, because, just as appraisal is meant to narrow and expedite resolution of disputes under the policy, so improvidently requiring the parties to pursue appraisal when the only proper course is litigation could have the opposite effect. Nor does the court believe that a more complete factual or legal development in this court is required prior to disposition of an interlocutory appeal. *Cf. S.B.L.*, 80 F.3d at 311. This matter will therefore be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the questions of law presented herein. However, this court will not stay any portion of this ruling while such an interlocutory appeal is pending. 28 U.S.C. § 1292(b).

### III.  CONCLUSION

Resolution of the present motions has required determination of numerous, complex issues, even though the court finds that issues concerning the filing of an adequate proof of loss and examinations under oath as preconditions to suit have been resolved or mooted. Although appraisal was not a precondition to suit, the court concludes that the appraisal demand was not untimely under the terms of the IRI Policy, nor did the filing of Terra's suit preempt the insurers' right to demand an appraisal. However, because such a right could have been waived, the key question was whether the IRI defendants' demand for an appraisal was made within a reasonable time after the parties reached an impasse on amount-of-loss issues. On that question, the undisputed evidence reveals that the demand was not untimely, and thus appraisal was not waived. In the alternative, if Terra bears the burden of proving a waiver by the IRI defendants, Terra has failed to do so, and if the burden is properly on the IRI defendants to defeat a "presumption" of waiver, they have certainly done so.

Thus, the court holds that the IRI defendants did not waive recourse to the appraisal process. Furthermore, the court finds that Terra is not entitled to a protective order pursuant to FED. R. CIV. P. 26(c) precluding appraisal, because appraisal is not unduly burdensome to Terra. Under the alternative standard recognized by the court, the IRI defendants, and probably all parties, would be prejudiced by excusing Terra from the appraisal process, because that process may result in substantial judicial economies and economies to the parties. A stay of litigation of amount-of-loss questions and enforcement of appraisal procedures is therefore within the inherent power of the court and appropriate in the circumstances of this case.

THEREFORE,

1. Terra's motions for protective orders are **denied.**

2. The motions for partial stays filed by defendants with whom Terra has settled its claims are **denied as moot.**

3. The IRI defendants' motion for a partial stay of proceedings is **granted as follows:**

   a. Litigation of cash value and amount-of-loss questions is **stayed** pending completion of appraisal procedures pursuant to the "Appraisal" provision of the IRI Policy, p. 3. However, the litigation of other claims, including portions of the claim for declaratory judgment pertaining to coverage issues, coverage issues pertinent to the ·breach-of-contract claim, the bad faith claim, or the unfair claims settlement practices claim, are *not* stayed.

      i. *Notwithstanding this partial stay*, the IRI defendants shall have *thirty (30) days* within which to move or plead to Terra's complaint.

      ii. Terra shall have *twenty-one (21) days* from the date of this order within

610

which *to designate its appraiser* in accordance with the "Appraisal" provision of the IRI Policy. The appointment of an umpire shall thereafter proceed in accordance with the same provision of the IRI Policy.

iii. The appraisal process shall determine *actual cash value and loss to each item* in accordance with the terms of the IRI Policy.

b. All discovery in this litigation shall have the dual purpose of also satisfying the "Requirements in case loss occurs" provision of the IRI Policy, including examinations under oath and inspection of property and documents, and vice versa. All such discovery, examinations, and inspections shall be conducted pursuant to the Federal Rules of Civil Procedure.

c. If, after good faith efforts to reach agreement, the parties shall fail to agree within *sixty (60) days* as to what claims or portions of claims are appraisable or upon what person or body shall make initial determinations of what are coverage or amount-of-loss issues, either party may so inform the court by filing a status report and motion for determination by the court of the scope of appraisal. The court will thereafter establish a briefing schedule on the motion providing for as expeditious a resolution as may reasonably be had.

4 This matter is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the questions of law presented herein, because the court concludes that there are controlling questions of law as to which there are substantial grounds for difference of opinion and an immediate appeal from this order may materially advance the ultimate termination of the litigation. However, no portion of this ruling is stayed while such an interlocutory appeal is pending.

**IT IS SO ORDERED.**